[L. A. No. 1157. Department Two.—July 14, 1904.]

SAN FRANCISCO SAVINGS UNION, Respondent, v. R. G. R. PETROLEUM AND MINING COMPANY et al., Appellants.

TIDE-LANDS—PRIVATE NUISANCE TO LITTORAL PROPRIETOR—ABATEMENT —INJUNCTION.—Although the state has the absolute property in and dominion and sovereignty over the soils under tide-water, the title of the state does not deprive the littoral proprietor of his right to access from his own land to the ocean as against a stranger. His right of access is distinct from the public right of navigation, and any interference therewith is, as to such littoral proprietor, a private nuisance, which he may maintain an action to abate and enjoin.

ID.—PERMISSION FROM SECRETARY OF WAR—ABSENCE OF JURISDICTION.— The secretary of war has no jurisdiction to grant any rights in tide-lands owned by the state, nor to deprive a littoral proprietor of his property and right of access by authorizing a stranger to use lands under tide-water in front of his property for the purpose of developing petroleum thereon.

APPEAL from a judgment of the Superior Court of Santa Barbara County and from an order denying a new trial. W. S. Day, Judge.

The facts are stated in the opinion.

Grant Jackson, J. W. Smith, and E. A. Rizor, for Appellants.

Richards & Carrier, for Respondent.

COOPER, C.—Appeal from judgment and order denying defendants' motion for a new trial.

The action was brought to obtain an injunction and to have abated an alleged nuisance erected in front of plaintiff's land on the seashore below the line of ordinary high water. Plaintiff is, and was at the times mentioned in the complaint, the owner of the tract of land described therein, bounded on the south by the Pacific Ocean. The fee to the strip of land south of the plaintiff's southern boundary between the mean high-water mark and the low-water mark where the tide ebbs and flows belongs to the state of California.

Plaintiff is the littoral proprietor of the lands described in the complaint. Prior to the commencement of the action defendants as naked trespassers unlawfully entered upon said strip of land where the tide ebbs and flows, and constructed a platform sixteen feet in width and thirty feet in length in front of the plaintiff's lands, and threatened to, and will unless restrained by the court, erect other platforms and obstructions on the said strip of land below mean high-water mark, and will thereby interfere with and prevent the access to and use of the ocean highway by the plaintiff. The court found that the said platform is a continuing nuisance and specially injurious to the plaintiff. The question to be decided is, as to whether or not the plaintiff as littoral proprietor can maintain an action to abate obstructions placed in front of his land by a stranger below the ordinary high-water mark.

According to the common law both the title to and dominion over the sea, and of rivers and arms of the sea where the tide ebbs and flows, and of all lands below high-water mark, within the jurisdiction of England are in the king. Such waters, and the lands which they cover, are incapable of private occupation and ownership. Their natural and primary uses are public in their nature, for highways of navigation and commerce, domestic and foreign, and for the purpose of fishing by all the king's subjects. The title to such lands is vested in the king as the sovereign representative of the nation for the public benefit. Every building or wharf erected upon such lands without license below high-water mark is a purpresture, and may at the suit of the king either be demolished or be seized and rented for his benefit, if not a nuisance to navigation. It is the general rule in this country that absolute property in and dominion and sovereignty over the soils under the tide-water in the several states belong to the state in which such lands are situate. (*Shively* v. *Bowlby,* 152 U. S. 1, and cases cited.)

But this absolute title in the state does not deprive the littoral proprietor of his right to access from his own land to the ocean as against a stranger. The language of the judge of the court below on this subject is as follows: "From time immemorial the sea has been treated as a vast waste not susceptible of occupation or private and individual ownership, except as herein indicated. Nations, governments, and peoples

have all been of one accord in treating it as exempt from appropriation by individuals. The occupation by defendants is in disregard of this universally conceded condition. Upon the strength of universal custom, conduct, and tacit consent and understanding individuals and communities have acquired properties and rights, and have located lands, built homes and cities along the seashore, because not alone for its commercial advantages, but for the permanent and indestructible beauty of the environment. Unlike the location of the interior, where the incidents of private ownership may permit encroachments by way of unsightly and disagreeable structures, the prospect of ocean view is sacred from individual obstruction and contamination. So thoroughly has this been understood and acted upon by the whole world that no obstruction—not even wharves and docks—not built by the abutting owners have ever been attempted, except under license and control of the state or some of its subdivisions to whom such control has been delegated. This policy and mode of dealing had inured to the property-owner abutting thereon as an additional property-right, which, though not involved in this case under the pleadings, I think is explanatory, if not the foundation of the principle enunciated by the courts, that the abutting landowner has property in the sea by way of access thereto. That no one else can acquire or own it gives the abutting owner that dominion which enables him to protect it for the benefit of his own property which he has located, occupied, and improved under the express assurance, to some extent, and the implied assurance, to a greater extent, that individual interference shall not disturb him from the oceanside. Whatever unlawfully obstructs the free use of this property, or unlawfully obstructs the free passage or use in the customary manner of the sea by way of egress or ingress to and from it, is a nuisance. (Civ. Code, sec. 3479.)''

It is said in Gould on Waters (3d ed., sec. 149): ''But a littoral proprietor, like a riparian proprietor, has a right to the water frontage belonging by nature to his land, although the only practical advantage of it may consist in the access thereby afforded him to the water for the purpose of using the right of navigation. This right of access is his only, and exists by virtue and in respect of his riparian property. It

exists, in the case of tide-waters, even where the shore is the sovereign's property, both when the tide is out and when it is in. It is distinct from the public right of navigation, and an interruption of it is an encroachment upon a private right, whether caused by a public nuisance or authorized by the legislature;'' and the authorities cited by the author sustain the text.

In this country the leading case is *Yates* v. *Milwaukee,* 10 Wall. 497, in which the supreme court of the United States said: ''But whether the title of the owner of such a lot extends beyond the dry land or not, he is certainly entitled to the rights of a riparian proprietor whose land is bounded by a navigable stream, and, among those rights, are access to the navigable part of the river from the front of his lot, the right to make a landing, wharf, or pier for his own use, or for the use of the public, subject to such general rules and regulations as the legislature may deem proper to impose for the protection of the rights of the public, whatever those may be. . . . This riparian right is property, and is valuable, and, though it must be enjoyed in due subjection to the rights of the public, it cannot be arbitrarily or capriciously destroyed or impaired.''

Respondents say the above case has been overruled in *Scranton* v. *Wheeler,* 179 U. S. 156-159; but it was not overruled as to what is said in the quoted language. In the latter case it was held that the government of the United States did not have to make compensation for an injury to a riparian owner's right of access to navigability that might incidentally result from the erection of a pier for the purpose of improving the navigation of the river.

That case involved the right of the sovereign to use and improve its navigable waters, and in the opinion it was said: ''The decision in *Yates* v. *Milwaukee* cannot be regarded as an adjudication upon the particular point involved in the present case.'' Instead of being overruled, the case of *Yates* v. *Milwaukee* is not even criticised. It has been usually followed in the several states and by the federal courts. (*Case* v. *Loftus,* 39 Fed. 731; *Sullivan Timber Co.* v. *City of Mobile,* 110 Fed. 186; *Illinois Central R. R. Co.* v. *Illinois,* 146 U. S. 387; note to *Miller* v. *Mendenhall,* 19 Am. St. Rep. 230; note to *Prior* v. *Swartz,* 36 Am. St. Rep. 336; *Rumsey* v. *New York*

*etc. R. R. Co.*, 133 N. Y. 79;[1] note to *State ex rel. Denny* v. *Bridges*, 40 L. R. A. 596 et seq.; *Blackwell* v. *Old Colony R. R. Co.*, 122 Mass. 1.)

We are not without authority in our own state upon the principle herein stated.

In *Blanc* v. *Klumpke*, 29 Cal. 159, the court, in passing upon a demurrer to the complaint, said: "That the alleged acts of the defendant amount to an obstruction of the navigation of the bay at the point in question, and also to the use of the space as a highway by land, does not, we think, admit of debate. If so the obstructions must be at least a public nuisance and indictable as such. . . . Undoubtedly if the obstructions only affect the plaintiff in common with the public at large, although in a greater degree, he cannot have his private action, but if he is thereby obstructed in the free use of his property and its comfortable enjoyment by him is thereby interfered with and to some extent prevented, can it be said he suffers only in common with the public at large? Anything which is injurious to health or indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, is declared to be a nuisance and the subject of an action; and it is further provided that such action may be brought by any person whose property is injuriously affected, or whose personal enjoyment is lessened by the nuisance, and by the judgment of the court the nuisance may be enjoined or abated and damages awarded."

In *Coburn* v. *Ames*, 52 Cal. 385,[2] it is held (and has been held in other cases) that the littoral proprietor could not maintain ejectment against one who erected a wharf on tidelands for the reason that the title is in the state and not in the littoral proprietor, but it was said in the opinion in speaking of the riparian proprietor's right: "On the contrary, giving to this right of the riparian owner its widest scope and latitude, it amounts only to this: that if he desires to wharf out and is unlawfully obstructed in the exercise of the right, he may maintain an action for damages; and if the obstruction amounts to a public nuisance it may be abated by appropriate proceedings for that purpose. If it be only a private nuisance which obstructs him in the exercise of his right to wharf

---

[1] 28 Am. St. Rep. 600.    [2] 28 Am. Rep. 634.

out, he may possibly cause it to be abated by the appropriate method."

In *Shirley* v. *Bishop,* 67 Cal. 543, it was held that the owner of land the boundary of which forms a part of the water-front has a vested right of free access to the navigable water, and may enjoin the erection of a wharf materially obstructing such access, as a nuisance. The court said: "The wharf if built by defendants as contemplated would deprive the plaintiffs of their ingress and egress to and from their lots and the navigable waters of the state."

After many conflicting decisions in England it has been established by recent judgments of the House of Lords that the owner of land fronting on a navigable river in which the tide ebbs and flows has a right of access from his land to the river, and may recover compensation for cutting off that access by the construction of public works authorized by act of parliament. (*Buccleuch* v. *Metropolitan Board of Works,* L. R., 5 H. L. Cas. 418; *Lyon* v. *Fishmongers Co.,* L. R., 1 App. Cas. 662; *North Shore Ry. Co.* v. *Pion,* L. R., 14 App. Cas. 612, 620.)

The argument is made that even if the construction complained of is a nuisance it is a public nuisance, and that plaintiff does not suffer special damage different in kind from that suffered by the public. An obstruction to navigation in so far as it would prevent the plaintiff from the right to the free use of the public waters just as it would prevent every one else would in one sense be an injury suffered alike by all the public. But the plaintiff has the right to free access from his land to the ocean. The obstruction of this right is a damage different in kind from that suffered by the general public, and in such case a private person may maintain his action. (Civ. Code, sec. 3493; *Blanc* v. *Klumpke,* 29 Cal. 159; Gould on Waters, sec. 123.) In the section cited Mr. Gould says: "Whenever the obstruction immediately adjoins or is upon or against the front of plaintiff's premises, it is to him a private nuisance for which an action will lie, or which may be restrained by injunction."

Our attention is called to the fact that defendants obtained permission from the secretary of war to erect the obstructions. The letter of the secretary of war is as follows:—

"I beg to inform you that there is no objection on the part

of the war department to your dredging and boring wells for the purpose of developing petroleum in the Pacific Ocean below low-water mark, provided your operations are conducted in such manner as not to produce shoals on the water-front or otherwise interfere with navigation. If formal permits to erect wharves and trestles is desired, it will be necessary for you to furnish drawings showing plan and location of such structure."

This at most was only a statement that so far as the war department was concerned it would make no objection if navigation was not interefered with. It referred to the bed of the ocean below low-water mark. The secretary of war cannot grant rights to lands owned by the state, nor can he deprive plaintiff of his property and rights by authorizing a stranger to take them. He has no jurisdiction of such matters.

The complaint states a cause of action and the judgment is the legal conclusion from the facts found.

It is advised that the judgment and order be affirmed.

Chipman, C., and Harrison, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

<div align="right">

McFarland, J., Lorigan, J., Henshaw, J.