234 P.2d 446

DRIESBACH et al. v. LYNCH et al.

No. 7705.

Supreme Court of Idaho.

July 26, 1951.

502

Harold S. Purdy, Coeur d'Alene, J. Orville Humphries, Spokane, Wash., Wm. S. Hawkins, E. L. Miller, Coeur d'Alene, for appellants.

Whitla & Knudson, Coeur d'Alene, for respondents.

THOMAS, Justice.

The plaintiffs, respondents herein, and the defendants, appellants herein, are the owners of adjoining properties fronting upon Lake Pend Oreille. The plaintiffs instituted an action against the defendants to restrain and enjoin defendants from interfering with the plaintiffs' right of possession and use of plaintiffs' property. The south line of plaintiffs' property as set forth in the description of the deed runs in an easterly-westerly direction approximately 286 feet, and intersects the shore line of the Lake at an acute angle. The property of the defendants adjoins plaintiffs' property on the south commencing at a point 198 feet east of the southwest corner of plaintiffs' property and continues easterly to Lake Pend Oreille. The shore line of the Lake runs in a northeasterly and southwesterly direction.

The plaintiffs have been the owners of their parcel of land since 1941 and have, during such ownership, maintained and operated a dock for pedestrian travel to and from boats and boathouses moored to their dock, which extends easterly into the Lake at right angles to the shore line.

The defendants' lands are likewise used commercially for the purpose of exploiting the fishing of the waters of the Lake. In 1948 the defendants erected along the boundary line between the respective properties six large wooden posts spaced approximately 13 feet apart and later, following the recession of the waters of the Lake, defendants extended the row of posts easterly by putting in some 10 additional railroad rails, thereby extending the row of posts so that the most easterly post was on the north side of plaintiffs' dock; defendants claim littoral rights south of the extended line of the row of posts, thereby compelling the plaintiffs to construct their approach on the north side of the easterly post in order to get to plaintiffs' dock.

The defendants' dock is located at and runs parallel with the south boundary line of defendants' property.

The plaintiffs contend that they are entitled to littoral rights and that the defendants have interfered with those rights by extending their posts out into the Lake on a line parallel with the south boundary line of their property, thereby encroaching upon the littoral rights of plaintiffs; on the other hand, the defendants contend that the plaintiffs have encroached upon defendants' littoral rights by extending their line perpendicular or at right angles with the shore line; the defendants of course

contend that the lands of the plaintiffs do not have actual contact with the water and for that reason plaintiffs are not entitled to any littoral rights.

The principal issues presented for consideration in this case are the determination of the natural or ordinary high water mark of Lake Pend Oreille upon the properties of the respective parties and if from such determination plaintiffs are littoral owners, then it becomes necessary to determine the direction in which the boundary line dividing the properties of the parties should be extended so that the respective parties may know the boundaries of and exercise and enjoy their littoral rights.

The court below found that the natural or ordinary high water mark on the plaintiffs' parcel was 15 feet westerly of and parallel with the east line of the plaintiffs' property as described in the deed; this would give plaintiffs actual contact with the waters of the Lake; the court also found that the southerly boundary of the littoral rights of the plaintiffs was determined by extending a line into the waters of the Lake at right angles to the high water line commencing at a point where the high water line intersects the south boundary of the plaintiffs' property; the court decreed that the defendants must remove twelve posts which were, as the court found, placed upon the area below the high water line and within the area of the plaintiffs' littoral boundaries, thereby constituting a barrier and an obstruction to the enjoyment of plaintiffs' littoral rights. Based upon these findings the court accordingly entered decree for the plaintiffs, and from such decree the defendants have appealed.

Defendants contend that the court erred in finding that the waters of Lake Pend Oreille constitute the east boundary of the property of the plaintiffs and that the general course of the shore line in front of plaintiffs' property is parallel with the easterly end line of plaintiffs' property and that the plaintiffs are entitled to littoral rights incident and appurtenant to such property and that the dock of plaintiffs is located directly in front of the property of plaintiffs and within the area of plaintiffs' littoral boundaries, and in further finding that the ordinary or natural high water line of Lake Pend Oreille where it bounds the property of plaintiffs is 15 feet westerly and parallel to the easterly end line of the property of plaintiffs as described in plaintiffs' deed.

It is the settled law in this State, and the parties to this appeal concede, that the State owns the title to the beds of navigable lakes and streams below the natural or ordinary high water mark. Gasman v. Wilcox, 54 Idaho 700, 35 P.2d 265; Raide v. Dollar, 34 Idaho 682, 203 P. 469; Northern Pacific Ry. Co., v. Hirzel, 29 Idaho 438, 161 P. 854; Callahan v. Price, 26 Idaho 745, 146 P. 732; 56 Am.Jur. Sec. 453, p. 865.

506

■ The natural or ordinary high water mark is that line which the water impresses on the soil by covering it for sufficient periods to deprive the soil of its vegetation and destroys its value for agricultural purposes. Payette Lakes Protective Ass'n v. Lake Reservoir Co., 68 Idaho 111, 189 P.2d 1009; Raide v. Dollar, supra.

The appellants urge that the findings of fact and the judgment entered by the trial court with reference to the location of the "high water line" across the properties of the respective parties is without support in the evidence. The evidence is voluminous, both documentary and oral, with reference to the presence or absence of vegetation upon the parcels of lands of the respective parties and the presence or absence of any line indicating the ordinary or natural high water line upon such properties; there is an abundance of evidence to the effect that the recurrent overflow of the waters of the lake had deprived the lands lying eastward from a line 15 feet westerly of and parallel with the east line of the plaintiffs' property of vegetation and had destroyed its value for agricultural purposes; on the other hand, there was direct and positive conflicting evidence to the effect that there was grass and other vegetation growing upon the lands in front of the plaintiffs' property and extending westward to the line 15 feet westerly of and parallel with the east line of the plaintiffs' property; there was also evidence to the effect that the natural or ordinary high water mark of the

Lake over the course of many years was at a point so established and found by the court. On the other hand, there was evidence to the effect that such high water mark was eastward from the easterly boundary line of the plaintiffs' property as described in their deed; the evidence on both points was irreconcilably conflicting.

■ The evidence discloses that the findings made by the court, the trier of the facts, both with reference to the point of the natural or ordinary high water line and with reference to the absence of vegetation growing upon each parcel of land below the line found as the natural or ordinary high water line, is based upon and supported by substantial, competent, although conflicting evidence. This court has uniformly held that findings made by the trier of the facts, supported by substantial, competent, although conflicting, evidence, will not be disturbed on appeal. Sec. 13–219, Idaho Code; Yearsley v. City of Pocatello, 71 Idaho 347, 231 P.2d 743; Holland v. Beames, 71 Idaho 343, 231 P.2d 741; Lanning v. Sprague, 71 Idaho 138, 227 P.2d 347; Hancock v. Halliday, 70 Idaho 446, 220 P.2d 384; Nelson v. Hoff, 70 Idaho 354, 218 P.2d 345.

■ The appellants contend that the court erred in refusing to admit defendants' Exhibit No. 10 in evidence; this exhibit consists of letters offered for the purpose of showing that the use of the particular area, the subject matter of dispute, by

the respondents and the respondents' predecessors in interest, was permissive by virtue of an understanding between respondents' predecessors in interest and one of the defendants which respondents had knowledge of; it was not error to refuse to admit such exhibit in evidence for the reason that title to lands bordering on a navigable lake must extend no farther than the natural or ordinary high water line, and that the State holds title to the beds of navigable lakes and streams below the natural or ordinary high water mark, for the use and benefit of the public; the only rights which the owners of the uplands, such as the parties involved in this litigation have, below such high water mark, is the enjoyment of their respective littoral rights within the limits of their littoral boundaries. Callahan v. Price, supra; Northern Pacific Railway Co. v. Hirzel, supra. Appellants had no such rights within the littoral boundaries of respondents' predecessors in interest and it is immaterial whether or not the use thereof was with or without the consent of appellants.

■ Appellants assign as error the ruling of the court in refusing to admit defendants Exhibit No. 11 in evidence; this exhibit is a photograph of the shore line of other property in the same general area, but not involved in this litigation, and the photograph itself did not establish or purport to establish the elevation at the point where the photograph was taken and, furthermore, the shore line of the particular area involved was not of such a character as to make it impossible to establish the ordinary or natural high water mark without resort to evidence as to conditions at other points on the Lake; where this is so, it is not prejudicial error to refuse to admit in evidence conditions at other places on the shore of the same lake to aid in a determination as to the ordinary or natural high water line of the property in dispute. Diana Shooting Club v. Husting, 156 Wis. 261, 145 N.W. 816.

■■ The appellants further assign as error the refusal of the court to permit them to introduce in evidence Exhibit No. 20, which exhibit was a permit issued by the Secretary of the Army to Mr. Puckett, one of the appellants, to maintain docks and pilings at a point where the respondents' docks are now located; it was not error to refuse to admit such exhibit in evidence, as title to the bed of such navigable lake was not vested in the United States of America but in the State of Idaho at all points below the natural or ordinary high water mark. Northern Pacific Railway Co. v. Hirzel, supra; Gasman v. Wilcox, supra; 56 Am.Jur. Sec. 461, p. 874; the Secretary of War cannot grant rights to lands owned by the State to third parties to maintain docks and pilings within the littoral boundaries of another littoral owner, thereby interfering with the rights of such littoral owner. San Francisco Sav. Union v. R. G. R. Pet. & Min. Co., 144 Cal. 134, 77 P. 823, 66 L.R.A. 242; 56 Am.Jur. Sec. 472, P. 887.

508

The appellants also assign as error the refusal of the court below to appoint referees to ascertain the ordinary or natural high water mark of the Lake, pursuant to the provisions of Sections 10-402 and 10-403, Idaho Code; the provisions of the above sections are discretionary upon the court as to whether or not it shall appoint referees to make such ascertainment; furthermore, such a motion was not made until several days after all the evidence had been introduced and the court itself had viewed the premises; the court did not abuse its discretion in refusing to appoint referees in this case.

One of the principal questions presented involves the court's establishment of the littoral boundary line between the properties of the respective parties. The court found that the general course of the shore line of said lake in front of the respective properties of the parties to the action is in a substantially straight line in a northeasterly and southwesterly direction and that such general course of the shore line is parallel with the easterly end line of the plaintiffs' property as described in the description contained in the deed to the plaintiffs; the court fixed the littoral boundary between the properties of the respective parties by extending a line at right angles to the high water line commencing at the point where said high water line intersects the south boundary of the plaintiffs' property and extending such line easterly into the waters of the Lake to a point equal distance with the easterly end of the plaintiffs' dock.

The question of determination of the littoral boundaries is one of first impression in this court; there are numerous bodies of water in the State of Idaho and consequently this question becomes of considerable importance and we have endeavored to call attention to certain rules which may serve as a guide under appropriate facts in the future; we are not unmindful, however, that in this instance we have only a specific problem for determination and that the rule applicable in this case may not be applied in every instance.

It may be stated as a general proposition that one of the basic rights enjoyed by owners of properties upon a navigable lake is the right to have access to the waters of such lake at the low water mark; this right is valuable and in many instances it is the controlling aspect of the value of such lands.

It is realized that due to the numerous variations of the shore line formations, such as a convex or a concave, or otherwise irregular shore line of a lake or other large body of water, no one rule or formula could be invoked to determine the littoral boundaries which would apply in all cases; in instances where the shore line is substantially a straight shore line these boundaries are more readily and easily ascertained and determined because

in such instances it is practical and equitable to draw a straight line according to the general course of the shore at high water mark and extend the lateral lines of all the properties upon such body of water at right angles with the shore line towards the low water mark; however, the irregularity in the formation of the shore line as above mentioned would make the application of this rule inequitable in many instances. The various rules which have been applied to this particular question are exhaustively and ably discussed and set forth in the case of Spath v. Larsen, 20 Wash.2d 500, 148 P.2d 834. It seems quite firmly established that there are a few general and fundamental rules which in most instances may be applied with reference to the apportionment of littoral rights: If the shore line is straight or substantially so, the littoral lines are to be extended from the divisional lines on shore into the water perpendicular to the shore line; in the event the shore line is concave, converging lines shall be run from the divisional shore lines to the line of navigability; again, if the shore lines are convex, the lines will be divergent to the line of navigability. Mutual Chemical Co. v. Mayor and City Council of Baltimore, D.C., 33 F.Supp. 881, at page 887.

It is evident in examining the cases that there seems to be no hard and fast rule or rules which are without modification to meet peculiar facts and circumstances; the controlling thought in every case is to treat each case in an equitable manner so that, so far as it is possible, all property owners on such a body of water have access to the water; the courts in all cases have striven to see that each shore line owner shall have his proportionate share of the deep water frontage and all of the rules which have been adopted and applied throughout the years by the courts in relation to this problem have had that end in view; the courts have not hesitated to point out that these rules often require modification under the peculiar circumstances of the case in order to secure equal justice, and that where such is the case the courts do not hesitate to invoke a modification to attain such objective.

In the instant case we are concerned only with the establishment of one boundary line between the respective littoral owners; it is not the intention of this court in setting forth some of the general principles that have been followed in instances where the facts of the particular case appear to warrant such application, to definitely declare the law of this state, but only insofar as it applies to the particular facts now before this court; we are not unmindful that there no doubt are endless variations of the shore lines of such bodies of water in this state which will perhaps in the future present many and varying questions concerning littoral rights and littoral boundaries which cannot be determined by one or two fixed rules.

In the instant case the court found that the general course of the shore line of

510

the lake in front of the properties of the respective parties was in a substantially straight line and that the general course of the shore line is parallel with the easterly end line of the plaintiffs' property and that the equitable and legal apportionment of littoral rights between the parties should be made by extending a line at right angles to the high water line, commencing at a point where such high water line intersects the southern boundary of the plaintiffs' property and extending the line easterly into the waters of the Lake; the so-called right angle principle applied to the facts of the instant case, as found by the court, appears to be both reasonable and equitable and supported by abundant respectable authority; Spath v. Larsen, supra; Fraser's Million Dollar Pier Co. v. Ocean Park Pier Co., 185 Cal. 464, 197 P. 328, 198 P. 212; 56 Am.Jur. Sec. 463, p. 876; 45 C.J. Sec. 148, p. 495; 65 C.J.S., Navigable Waters, § 64; we approve of the rule that littoral rights upon a navigable lake should be divided between adjoining owners by erecting lines perpendicular to the general course of the shore line on such lake in those cases where the shore line is straight, or substantially so.

No reversible error being made to appear, the judgment of the trial court is affirmed.

Costs to respondents.

GIVENS, C. J., and PORTER, TAYLOR and KEETON, JJ., concur.