430 P.2d 666

**David HILLEARY, Plaintiff-Appellant,**

**v.**

**Harry C. MEYER and Rose Meyer, husband and wife, Defendants-Respondents.**

**No. 9782.**

Supreme Court of Idaho.

July 27, 1967.

McNaughton & Sanderson, Coeur d'Alene, for appellant.

Lyons & Hofmeister, Sandpoint, for respondents.

McFADDEN, Justice.

David Hilleary, plaintiff-appellant, since 1956 has been the owner of certain real property in Bonner County fronting for two hundred feet on Priest Lake. He also owns other adjacent real property which is subdivided for sale to others. Since 1951 Mr. and Mrs. Meyer, defendants-respondents, have owned real property also fronting on Priest Lake for about eighty feet, and which property is adjacent to and east of the Hilleary property. Respondents maintain a dock extending from their property out into the lake, beyond which dock they have two pilings joined by logs to serve as a break-water. Maintaining of this dock and the pilings in their existing positions lead to this litigation.

Appellant instituted this action to have the court "determine the boundary line which equitably apportions the littoral or riparian rights between the said riparian lands of these parties," and to enjoin and abate any encroachment by the respondents upon what he claimed to be his littoral rights.

In order that the issues and contentions of the parties may be more readily comprehended, the following sketch of the real

property of the parties, reflecting the location of existing dock and the adjacent shorelines, taken from appellant's Exhibit 1, is made a part of this opinion.

Testimony of the respective parties shows that the respondent's dock and the two pilings are to the east of a projection of the property line common to both the appellant's and respondent's property. Appellant described the dock as being 150 feet overall, excluding a ramp from the beach onto the dock. Mr. Sargent, the surveyor who prepared Exhibit 1, testified that the dock was 100 feet from the ramp, that the farthest end of the dock was 160 feet from the end of the ramp. Mr. Meyer testified that the present dock is 80 feet in length, with about an 80 foot ramp to it. Mr. Meyer also testified that he put in the two pilings further out from the end of the dock; that these were connected by a "boom stick," the purpose of the pilings being to give protection to the dock from waves during storms.

Appellant's assignments of error present two principal issues attacking the findings of fact, conclusions of law and judgment of the court, i. e., that the court erred in finding that the littoral rights line between the parties is the extension of the property line dividing the parties' property, and that the court erred in concluding that the defendants have obtained prescriptive rights to maintain their dock and pilings where now located.

The trial court found:

"II

"That the shoreline of the property owned by the parties, and particularly the high water mark, from the surveys and the personal observation of the Court does not lie in a concave line."

After making this initial finding, on motion of appellant, it was supplemented by adding the following:

"that, however, the general shoreline of the bay between the West and East head-

lands * * * is concave; also that a small portion of the shoreline of plaintiff's property is concave, although the shoreline extending along the eastern portion of plaintiff's property and the cross-defendant's property is relatively straight."

The trial court also found:

"V

"That the littoral line of use between the parties extends from the West property line of the Defendants and the East property line of the Plaintiff extended. The Defendants' pilings are at least twelve (12′) feet East of the line thus extended."

The trial court concluded:

"1. Defendants' dock and pilings in no manner interfere with the equitable littoral rights of the Plaintiff."

It is the appellant's contention that the trial court was in error in these findings and conclusions. Appellant asserts that the effect of extending the property line between his property and that of the respondents as the line of delineation of the littoral rights of the parties improperly limits the use of his littoral rights. He asserts that properly such line of delineation should be southeast from the point on the shore, where the established water line intersects the property line between the respective parties.

Under the present findings of the trial court, there is merit to the appellant's contention. This court in Driesbach v. Lynch, 71 Idaho 501, 234 P.2d 446 (1951), considered a case involving the right of possession, use and enjoyment of littoral rights. In that case this court affirmed a judgment restraining interference by defendants of plaintiff's use and enjoyment of those rights, holding that equitable and legal apportionment of littoral rights was to be made by extending a line at right angles to the high water line, commencing at a point where that line intersected the southern boundary of the plaintiff's property. In the Driesbach case, the court was

dealing with a factual situation where the shoreline was straight, and not a part of a cove or bay.

The following portion of the opinion in Driesbach v. Lynch, supra, is pertinent and bears repeating here:

"It may be stated as a general proposition that one of the basic rights enjoyed by owners of properties upon a navigable lake is the right to have access to the waters of such lake at the low water mark; this right is valuable and in many instances it is the controlling aspect of the value of such lands.

"It is realized that due to the numerous variations of the shore line formations, such as a convex or a concave, or otherwise irregular shore line of a lake or other large body of water, no one rule or formula could be invoked to determine the littoral boundaries which would apply in all cases; in instances where the shore line is substantially a straight shore line these boundaries are more readily and easily ascertained and determined because in such instances it is practical and equitable to draw a straight line according to the general course of the shore at high water mark and extend the lateral lines of all the properties upon such body of water at right angles with the shore line towards the low water mark; however, the irregularity in the formation of the shore line as above mentioned would make the application of this rule inequitable in many instances. The various rules which have been applied to this particular question are exhaustively and ably discussed and set forth in the case of Spath v. Larsen, 20 Wash.2d 500, 148 P.2d 834. It seems quite firmly established that there are a few general and fundamental rules which in most instances may be applied with reference to the apportionment of littoral rights: If the shore line is straight or substantially so, the littoral lines are to be extended from the divisional lines on shore into the water perpendicular to the shore line; *in the*

*event the shore line is concave, converging lines shall be run from the divisional shore lines to the line of navigability;* again, if the shore lines are convex, the lines will be divergent to the line of navigability. Mutual Chemical Co. v. Mayor and City Council of Baltimore, D.C., 33 F.Supp. 881, at page 887." (Emphasis added.) 71 Idaho at 508–509, 234 P.2d at 450–451.

The trial court in establishing the line of demarcation of the littoral rights between the respective parties, in effect employed a rule applicable to a case where the property of the parties is on a relatively straight line and not a part of a cove or bay. The trial court's findings reflect that the shoreline of the parties involved in this action was relatively straight. The extension of the boundary line (which was approximately at right angles to the shoreline) between the real property had some justification. However, the trial court failed to consider that the location of this property was actually in a cove or bay, even after such fact was called to the attention of the court by motion to amend the findings of fact. The exhibits admitted in evidence clearly reflect that all the property involved in this litigation fronts on an unnamed bay or cove, and under these facts application of the equitable rules normally used on straight shoreline would be erroneous unless it be shown that the actual location of the navigable waters of the lake necessitated application of such rule. Driesbach v. Lynch, supra; Spath v. Larsen, 20 Wash.2d 500, 148 P.2d 834 (Wash., 1944). See also: 65 C.J.S. Navigable Waters § 64, p. 219; 6 Thompson, Real Property (1962 Replacement) § 3083, p. 746; 1A Thompson, Real Property (1964 Replacement) § 280, p. 474; 56 Am. Jur. Waters § 463, p. 876.

Although the court inspected the premises and there was some testimony as to where the depth of water became insufficient for navigable use, the findings of fact do not explain where the navigable water commences and the record fails to disclose any peculiarity of water depth during times either of low or high water that would justify application of rules normally used with straight lake frontage to property that is situate in the cove or bay. Thus the trial court erred in the application of the equitable rules to these facts.

Appellant also asserts that the trial court erred in concluding that respondents "have obtained a prescriptive right to maintain their said dock and piling where now located." In its original findings of fact, of June 22, 1965, the trial court found:

"III

"Defendants present dock, which extends from the Defendants' property into the lake, replaced a former dock located in the same position. More than ten (10) years have elapsed since Defendants originally positioned and began to maintain the former dock."

Upon appellant's motion, this finding was supplemented by order of the court on August 12, 1965, by addition of the following:

"that defendants' present dock installation is approximately 180 feet in length and is located in close proximity to the extended west line of defendants' property; that defendants' present dock extends approximately 40 feet further into the lake than did the former dock and was so installed within five (5) years prior to the commencement of this action; that two pilings connected by two floating logs were installed by defendants approximately 40 feet beyond the lake end of said dock in 1962, and have at all times since been and now are maintained by the defendants; that the western most piling is approximately 12 feet inside defendants' extended west property line and the other piling is approximately 30 feet to the east of the west piling."

In the conclusions of law dated June 22, 1965, the trial court held:

"3. Defendants have maintained the dock in its present location for such

period as to establish the prescriptive right to the use and enjoyment thereof without interference from the Plaintiff."

By reason of the supplement to the findings of fact entered on August 12, 1965, above quoted, and particularly by reason of the finding that the 40 foot extension to respondents' former dock was installed within five years prior to commencement of the action, serious doubt is cast upon the correctness of the conclusion of law; further, the evidence is undisputed that the pilings were installed out from the dock in 1962, well within the five-year period.

This issue of prescriptive right to maintain the dock, however, is of no great importance unless, upon retrial it be determined that such dock encroached upon what the trial court should then determine to be the correct line of demarcation between the littoral rights of the respective parties.

The judgment is reversed and the cause remanded for further proceedings in conformity with the views herein expressed.

Costs to appellant.

SMITH, McQUADE and SPEAR, JJ., and DONALDSON, District Judge, concur.