[No. 3082-1.    Division One.    July 26, 1976.]

FLOYD E. HEFFERLINE, ET AL, *Respondents*, v. JOHN LANGKOW, ET AL, *Appellants*.

*Charles F. Diesen,* for appellants.

*Barokas & Martin, Larry L. Barokas,* and *Barry M. Johnson,* for respondents.

FARRIS, J.—John and Betty Langkow, husband and wife, appeal from a judgment of the King County Superior Court ordering them to remove a certain portion of their dock from Lake Leota. We reverse in part, affirm in part, and remand.

Lake Leota is a privately-owned, natural, nonnavigable body of water which is approximately 10 acres in size located in the northeastern part of King County. Figure 1 is

a sketch of the property owned by the parties to this lawsuit (based upon the various exhibits presented at trial).

FIGURE 1

The lake and the surrounding upland property were originally owned by Edward and Leota Brady. When the uplands were initially subdivided into 24 lots, each parcel was made subject to certain conditions and covenants including:

> The Lake Leota property being restricted to the use in common with all other shore owners for bathing, swimming, boating and fishing only.
>
> . . .
>
> All of these conditions are covenants running with the land and all grantees of the purchaser are bound thereby.

Exhibit 1. In addition, it was provided that each grantee was entitled to an undivided 1/24 interest in the bottom of the lake.

Floyd and Arline Hefferline, husband and wife, are the owners of the western portion of lot 2 on Figure 1. Robert and Diane Waitt, husband and wife, are the owners of the eastern portion of lot 2 on Figure 1. John and Betty Langkow, husband and wife, are the owners of lot 3 on Figure 1. The dispute arose when the Langkows constructed a dock from their upland property toward the center of the lake. The Hefferlines and Waitts brought this action against the Langkows alleging that the dock (1) was responsible for a significant reduction in the value of their property and (2)

constituted an intentional and unreasonable interference with their riparian and littoral rights. In addition, each side alleged that the other had illegally placed fill material into the lake. The trial court, sitting without a jury, determined that the Langkow dock constituted an intentional and unreasonable interference with the Hefferline and Waitt property rights and ordered it removed "to the extent that it extends more than 70 feet from the shore line and more than 10 feet across the common boundary of plaintiff and defendant by line of sight." Conclusion of law No. 2. As to the allegations regarding the fill material, the trial court found that there had been no significant intrusion into the lake by either side and characterized the issue as de minimis. The Langkows appeal.

In resolving the dispute over the location of the Langkow dock, the trial court apparently determined the property rights of the Langkows vis-a-vis those of the Hefferlines and Waitts (1) by finding that because of its location the Langkow parcel was subservient to the Hefferline and Waitt parcels as far as access to the lake is concerned, and (2) by using an extension of the common boundary line between the Waitt and Langkow parcels as a basis for ruling how far the dock could reasonably project into the lake. It erred in employing this approach; we reverse its determination.

In Washington, riparian[1] owners of land on nonnavigable lakes hold in common and may exercise, subject to a rule of reasonableness, such rights as access, swimming, fishing, bathing, and boating. *Bach v. Sarich,* 74 Wn.2d 575, 579-80, 445 P.2d 648 (1968); *Botton v. State,* 69 Wn.2d 751, 756, 420 P.2d 352 (1966); *Snively v. Jaber,* 48 Wn.2d 815, 820-22, 296 P.2d 1015, 57 A.L.R.2d 560 (1956); *In re Clinton Water Dist.,* 36 Wn.2d 284, 287-88, 218 P.2d 309 (1950). Here, these rights are possessed by each of the parties as a result

---

[1]While traditionally riparian rights are associated with land abutting upon a river and littoral rights are associated with land abutting upon a lake, current usage makes riparian an acceptable term as to rights associated with land abutting upon either a river or a lake. *Botton v. State,* 69 Wn.2d 751, 753 n.1, 420 P.2d 352 (1966).

of (1) their ownership of land abutting on the lake, (2) the conditions and covenants contained in their deeds, and (3) the specific undivided interest in the bottom of the lake associated with each of their parcels. What must be determined on remand is whether that portion of the dock which extends into the lake is legal considering the riparian rights of the parties. The test for deciding whether a given structure is legal is twofold: it must (1) constitute a riparian use and (2) be reasonable. *Bach v. Sarich, supra* at 579-80. The following comments are offered as an aid to the court on remand in applying this test.

While the reasonableness of the dock must ultimately be determined on the basis of all of the facts and circumstances, we suggest, *but do not require*, that the court approach this issue by first defining the general area within which the dock could conceivably be located. Guidance in accomplishing this can be derived from the cases dealing with the ownership of tidelands[2] and the apportionment of riparian rights associated with navigable waters. However, since Lake Leota is held in common, by citing these cases we necessarily make no holding regarding any actual *ownership* of any specific portion of the lake bottom. The basic Washington decision in this area is *Spath v. Larsen*, 20 Wn.2d 500, 524-25, 148 P.2d 834 (1944), wherein the court formulated the following general rules:

> *First*: In adjudicating the ownerships of tidelands between adjoining upland owners on a concave shore line, each upland owner is entitled to a proportionate share of the tidelands extending to the low water mark.
>
> *Second*: The course or courses of the boundaries of the upland properties should be disregarded, each upland owner being entitled to share ratably in the adjoining tidelands, having regard only to the amount of shore line which he owns, lying between the points where the lateral boundaries of his upland meet the shore line or the government meander line, whichever, in the particular case, constitutes the water boundary of his upland.

---

[2] For a comprehensive analysis of the rights of riparian owners to navigable waters and tidelands, *see Harris v. Hylebos Indus, Inc.,* 81 Wn.2d 770, 505 P.2d 457 (1973).

*Third*: Tidelands should be apportioned between the respective upland owners so that, as the whole length of the water boundary of the land within the concave shore, cove, or bay, is to the whole length of the low water line, so is each landowner's proportion of the shore line to each owner's share of tidelands along the line of low water. Tidelands may be divided between adjoining owners by erecting lines perpendicular to the general course of shore line only in cases where the shore line is straight, or substantially so.

Further guidance is provided by the following passage from *Hilleary v. Meyer*, 91 Idaho 775, 777-78, 430 P.2d 666, 668-69 (1967), *quoting Driesbach v. Lynch*, 71 Idaho 501, 234 P.2d 446 (1951):

The various rules which have been applied to this particular question are exhaustively and ably discussed and set forth in the case of Spath v. Larsen, 20 Wash.2d 500, 148 P.2d 834. It seems quite firmly established that there are a few general and fundamental rules which in most instances may be applied with reference to the apportionment of littoral rights: If the shore line is straight or substantially so, the littoral lines are to be extended from the divisional lines on shore into the water perpendicular to the shore line; *in the event the shore line is concave, converging lines shall be run from the divisional shore lines to the line of navigability*; again, if the shore lines are convex, the lines will be divergent to the line of navigability. Mutual Chemical Co. v. Mayor and City Council of Baltimore, D.C., 33 F.Supp. 881, at page 887." (Emphasis added.) 71 Idaho at 508-509, 234 P.2d at 450-451.

It appears to us that by relating the "low water line" and the "line of navigability" to a line in the lake which defines the minimum depth necessary for the exercise of riparian rights, the court will be able to apply these rules to the instant case and thereby have a sound starting point from which it can ultimately determine whether the dock is reasonable. Of course, these rules are not necessarily applicable to every situation; the court must treat each affected riparian owner equitably and arrive at the most appropriate solution in view of all of the interests involved. *Grill v.*

*Meydenbauer Bay Yacht Club,* 61 Wn.2d 432, 435-38, 378 P.2d 423 (1963).

A further question raised whenever a case such as this is presented is joinder. On remand, the court should determine whether it is necessary, or desirable, that some or all of the additional riparian owners around Lake Leota be made a part of the action. *See* CR 19; *Snively v. Jaber, supra* at 822-23; *Seattle Factory Sites Co. v. Saulsberry,* 131 Wash. 95, 99-100, 229 P. 10 (1924). *But see Mayo v. Jones,* 8 Wn. App. 140, 143-44, 505 P.2d 157 (1972).

The final issue is whether the trial court erred in applying the de minimis rule to the fills made by the parties. In arguing against the application of this rule, the Langkows quote the following law review analysis of the case of *Bach v. Sarich, supra*:

> Thus, in Washington, a structural use or fill must be both riparian *and* reasonable in order to be lawful. Any non-riparian use which occupies even a minute portion of a nonnavigable lake surface should be illegal under the strict logic of the *Bach* opinion.

Johnson & Morry, *Filling and Building on Small Lakes— Time for Judicial and Legislative Controls,* 45 Wash. L. Rev. 27, 43 (1970).

We do not reach the issue of whether *Bach* precludes the application of the de minimis rule to structural uses or fills. Whether fill material was actually introduced into the lake was a disputed question of fact. The only finding on the matter entered by the trial court was:

> There was no significant intrusion upon the shoreline or the lake by either plaintiff or defendants by the placing of minimal amounts of fill which the court regards as *de minimus* [*sic*].

Finding of fact No. 19. The finding does not indicate to what extent, if any, the fills extended past the shoreline. We therefore have no basis for appellate review of the

application of the de minimis rule and thereby affirm the determination of the trial court.

Reversed in part, affirmed in part, and remanded.

SWANSON and CALLOW, JJ., concur.

Petition for rehearing denied December 30, 1976.

Review by Supreme Court pending February 10, 1977.