112 P.3d 805 (2005)
141 Idaho 517
John C. BRETT, Petitioner-Appellant,
v.
ELEVENTH STREET DOCKOWNER'S ASSOCIATION, INC., an Idaho Corporation and the Idaho Land Board, Idaho Department of Lands, a political subdivision of the State of Idaho, Winston Wiggins, Director, Respondents.
No. 29846.
Supreme Court of Idaho, Boise, February 2005 Term.
May 3, 2005.
*806 Richard K. Kuck, Coeur d'Alene, for appellant.
John F. Magnuson, Coeur d'Alene, for respondent Eleventh Street Dockowners Association, Inc.
*807 Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent State of Idaho. Steven J. Schuster argued.
TROUT, Justice.
This is an appeal from a decision of the Idaho Department of Lands (IDL) issuing an amended lake encroachment permit to the Eleventh Street Dockowners Association (Association) for the Coeur d'Alene Marina (Marina). The district court, on judicial review, affirmed IDL's issuance of the permit over the objection of a neighboring property owner, John Brett (Brett). Because the IDL decision was not arbitrary, capricious or an abuse of discretion and was consistent with Idaho law, we affirm.

I.

FACTUAL AND PROCEDURAL BACKGROUND
The history of the Marina dates back more than forty years, before the enactment of the Idaho Lake Protection Act, Idaho Code title 58, chapter 13. The original encroachment permit was issued for a then-existing marina in 1975. The Marina was configured with a main approach dock (boardwalk) oriented due north and south attached near the eastern boundary of the Marina property, and a series of docks containing boat slips attached at right angles on the west side of the boardwalk. The encroachment permit was amended in 1978, when a bulkhead, fill and a boat launch ramp were added, and the Marina became known as the Coeur d'Alene Marina. By 1989, the Marina had deteriorated and the owners at the time, Glen Littleton and Northwest Resorts, Inc., the Association's predecessors in interest, applied for an amended encroachment permit to replace and repair existing slips, install a new walkway and reconfigure the Marina. This permit was approved and issued by the State in July 1989.
Although the plans submitted by Northwest Resorts, Inc., and approved by IDL, represented that the Marina's eastern boardwalk would be constructed along a due north-south line, the boardwalk was actually constructed along a south-easterly line. The south-easterly construction of the Marina's eastern boardwalk violated the terms of Northwest Resorts' lake encroachment permit and IDL served a notice of violation on it, although the agency never took further enforcement action.
As of 1988, Dohn and Elizabeth Johnson (the Johnsons) owned the Marina as well as the adjoining property on which Brett's house is now located. The Johnsons then sold the Marina to Northwest Resorts, including a right of first refusal for the Johnson (now Brett) residence and an option on the littoral rights waterward of the Johnson residence. After the 1989 permit was issued, the Johnsons objected to the reconstructed Marina and the placement of the docks because the docks allegedly infringed on the Johnsons' littoral rights. When negotiations fell through, and Northwest Resorts failed to change the location of the docks, the Johnsons filed a suit in 1989 in Kootenai County, denominated as Johnson v. Northwest Resorts and Littleton.
The case was tried to a jury and the jurors were instructed they needed to determine the littoral boundaries of Northwest Resorts' property in order to determine whether Northwest Resorts, by making dock modifications, was trespassing on adjacent property owned by the Johnsons. The jury concluded there was no trespass, presumably based upon the testimony of Northwest Resorts' expert witness, James Meckel, who had surveyed the land and navigable water and had submitted a survey showing his determination of the littoral boundaries.
In 1991, Northwest Resorts applied to IDL for two additional permits for modifications or reconstruction on the docks and surrounding area, which were issued by IDL. The Marina later changed hands and ultimately the encroachment permit was transferred to the Association in 1999. The Association itself does not own any adjoining real property and simply leases the appurtenant land upon which the encroachment permit is based.
Brett purchased the private property directly adjacent to the Marina in 1995. In 1999 or 2000, the Association sold side-tie *808 moorage to the owners of two large "houseboats" along the east side of the boardwalk, in violation of the terms of its lake encroachment permit. These vessels consisted of a sixty-eight foot long, 48,000 pound, two-story houseboat named the "Jennifer," and a ninety-two foot long houseboat named the "Piggyback." On October 20, 2000, IDL sent the Association the first of several notices that the sale of permanent moorage on the east side of the boardwalk violated the terms of the Association's lake encroachment permit. After receiving no response, a deputy attorney general for IDL served a notice of violation on the Association and threatened revocation of the Association's encroachment permit unless the Marina was brought into compliance.
The Association then responded by filing an application to amend its encroachment permit and proposed mooring the large boats on the east side of the boardwalk, but moving them waterward (south) so they no longer infringed on Brett's littoral rights. It also proposed moving a public sanitary pump station landward, and constructing a new seawall/breakwater at the waterward end of the boardwalk. The application was processed pursuant to Idaho Code § 58-1306. Various public notices were published and comments were solicited from public agencies.
Brett requested a public hearing pursuant to Idaho Code § 58-1306(c) to object to the application. At the hearing, the parties submitted evidence and testimony in support of and in opposition to the amendment. While Brett testified that he was not opposed to the general configuration and orientation of the Marina, his primary concern was the presence of the large boats moored on the east side of the boardwalk. Brett argued that permanent moorage of the houseboats anywhere on the east side of the dock adversely affected his property value, invaded his privacy and infringed on his quiet enjoyment of the property.
On December 14, 2001, IDL issued findings of fact and conclusions of law and approved the permit to the Association with several conditions. IDL concluded that the Association had moored the large boats on the east side of the boardwalk in violation of the then-existing encroachment permit and that the large boats moored there were an infringement on Brett's littoral boundary. However, IDL also concluded that the Association had demonstrated a need for the moorage based upon the fact that boats were moored there, and the fact that mooring the boats in the interior of the marina was very difficult due to the congestion in the interior slips. IDL incorporated the Meckel survey into its decision and also referenced the Johnson litigation and the 1991 permit amendments. It found that, even if those earlier proceedings did not finally determine the Marina's littoral boundary, it would now adopt the Meckel survey as the determination of littoral rights because it represented a "fair and equitable allocation of the littoral area."
Finally, IDL weighed the justification or benefit of the proposed encroachment "against the impacts on the adjacent property and the lake value factors," and determined that the amended permit should be approved. However, as a part of the decision and order, it specifically provided that no vessels could be moored on the east side of the dock closer than 201.5 feet from the land, and further restricted the permanent moorage to two vessels.
Brett then timely sought reconsideration pursuant to Idaho Code § 58-1306(d). A reconsideration hearing was held on February 1, 2002. The parties again submitted documents and testimony in support of and in opposition to the proposed amendment to the existing permit. At the close of the hearing, the hearing officer requested the parties to submit scaled drawings of the Marina as it exists at present. After additional information was submitted by the parties, IDL again issued findings of fact, conclusions of law and an Order on June 27, 2002, upholding its prior decision to issue the amended permit with the same conditions.
Brett appealed IDL's decision to the district court, which issued a decision affirming IDL's issuance of the permit. Brett then timely filed this appeal.

*809 II.

STANDARD OF REVIEW
Judicial review of agency decisions is governed by the Idaho Administrative Procedures Act, Idaho Code title 67, chapter 52. Idaho Code § 67-5279(3) provides that a court shall affirm an agency action unless the court finds that the agency's findings, inferences, conclusions or decisions are "(a) in violation of constitutional or statutory provisions; (b) in excess of the statutory authority of the agency; (c) made upon unlawful procedure; (d) not supported by substantial evidence on the record as a whole; or (e) arbitrary, capricious, or an abuse of discretion." A reviewing court "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." Idaho Code § 67-5279(1). Regardless of whether the agency action meets the standard set forth in Idaho Code § 67-5279(3), "agency action shall be affirmed unless substantial rights of the appellant have been prejudiced." Idaho Code § 67-5279(4); see generally Sagewillow, Inc., v. Idaho Dept. of Water Resources, 138 Idaho 831, 835-36, 70 P.3d 669, 673-74 (2003)(court review of agency decisions).
"On an appeal from the district court's decision on that petition [for judicial review under the APA], this Court reviews the agency record independently of the district court's decision." Sagewillow, Inc., 138 Idaho at 836, 70 P.3d at 674 (citation omitted). The Court's role is to review the matter to ensure compliance with the applicable standards. Id. If these standards are not met, the agency action "... shall be set aside, in whole or in part, and remanded for further proceedings as necessary" in accordance with the Court's discretion. Idaho Code § 67-5279(3); see also Sagewillow, Inc., 138 Idaho at 836, 70 P.3d at 674.

III.

ANALYSIS
Brett's central argument on appeal is that the littoral boundary between his property and the Marina has never been established in accordance with Idaho law and that IDL failed to make specific findings regarding the competing littoral rights at issue in approving the amended lake encroachment permit. He requests that this case be remanded so IDL can do a detailed examination of the appropriate location of the littoral line between the properties, including the line of navigability. In addition, Brett contends that IDL's conclusions regarding the Association's need for the amended permit and its balancing of competing interests is arbitrary, capricious and without any factual support in the record.

A. Establishing the Littoral Boundary
Littoral rights, for the purposes of issuing lake encroachment permits, refer to the right of owners or lessees of land adjacent to navigable waters "to maintain their adjacency to the lake and to make use of their rights" as littoral owners by building or using "aids to navigation". See I.C. § 58-1302(f). Issuance of a lake encroachment permit, i.e. permission to place a dock on the lake, necessarily contemplates a determination of littoral rights as defined by the Idaho Lake Protection Act. Lovitt v. Robideaux, 139 Idaho 322, 326, 78 P.3d 389, 393 (2003). "A holder of a valid permit cannot locate a dock in a manner that infringes upon an adjacent landowner's littoral right". Id. Thus, IDL must determine the littoral rights of adjoining riparian landowners when there is a dispute regarding placement of an encroachment pursuant to a permit and possible infringement of those rights. Id.
Brett contends that IDL's finding that the Meckel survey represented a fair and equitable apportionment of the parties' common littoral boundary was not adequate and constitutes reversible error. See Hilleary v. Meyer, 91 Idaho 775, 430 P.2d 666 (1967). He argues that in determining the applicable littoral boundaries for purposes of approving the encroachment permit, an examination of the shoreline is a necessary prerequisite, and IDL failed to make specific factual findings with respect to the configuration of the shoreline or the location of the line of navigability. Therefore, Brett would have the Court remand this case so that IDL can make the appropriate determination.
*810 Initially, we make two observations about the lawsuit and earlier determinations granting amendments to the encroachment permit. First, there is a reasonable basis for concluding that the jury's verdict in the Johnson litigation determined the littoral boundaries of the properties at issue, collaterally estopping Brett from re-litigating the issue of littoral rights now. The jury had to rely on the Meckel survey, and its determination of the littoral boundaries, in order to conclude that no trespass had occurred. Secondly, the Association points out that the 1991 amended permit likewise resolved the question, as the permit utilized the littoral rights line established by the Meckel survey. However, we need not address either of those arguments because the current application for encroachment presented IDL with the issue of the littoral boundaries between the Marina and Brett's property, and IDL clearly resolved the issue.
In Driesbach v. Lynch, 71 Idaho 501, 234 P.2d 446 (1951), this Court set forth the general rules which govern establishing littoral zones applicable to adjacent property owners:
It is realized that due to the numerous variations of the shore line formations, such as a convex or a concave, or otherwise irregular shore line of a lake or other large body of water, no one rule or formula could be invoked to determine the littoral boundaries which would apply in all cases; in instances where the shore line is substantially a straight shore line these boundaries are more readily and easily ascertained and determined because in such instances it is practical and equitable to draw a straight line according to the general course of the shore at high water mark and extend the lateral lines of all the properties upon such body of water at right angles with the shore line towards the low water mark; however, the irregularity in the formation of the shore line as above mentioned would make the application of this rule inequitable in many instances. ... It seems quite firmly established that there are a few general and fundamental rules which in most instances may be applied with reference to the apportionment of littoral rights: If the shore line is straight or substantially so, the littoral lines are to be extended from the divisional lines on shore into the water perpendicular to the shore line; in the event the shore line is concave, converging lines shall be run from the divisional shore lines to the line of navigability; again, if the shore lines are convex, the lines will be divergent to the line of navigability (citation omitted).
It is evident in examining the cases that there seems to be no hard and fast rule or rules which are without modification to meet peculiar facts and circumstances; the controlling thought in every case is to treat each case in an equitable manner so that, so far as it is possible, all property owners on such a body of water have access to the water; the courts in all cases have striven to see that each shore line owner shall have his proportionate share of the deep water frontage and all of the rules which have been adopted and applied throughout the years by the courts in relation to this problem have had that end in view; the courts have not hesitated to point out that these rules often require modification under the peculiar circumstances of the case in order to secure equal justice, and that where such is the case the courts do not hesitate to invoke a modification to attain such objective.
Driesbach, 71 Idaho at 508-509, 234 P.2d at 450-451.
While the IDL decision does not specifically set forth the nature of the shoreline or the line of navigability, IDL made extended findings as to the information it considered in making the determination as to the littoral boundary. IDL was in possession of the Meckel survey, as well as affidavits from James Meckel and Neil Fitzsimmons explaining the process they went through in establishing the proposed littoral boundaries. The information IDL considered also contained specific conclusions regarding the nature of the shoreline at issue and the line of navigability. Indeed, it appears from the surveyors' affidavits that they considered the Driesbach standards articulated by this Court and specifically followed them in formulating *811 an opinion as to the applicable littoral boundaries. IDL was not required to repeat those findings in its decision, as it is clear from the record that it considered that information and found that Meckel's survey was a fair and equitable means of apportioning the boundaries so as to maximize access to navigable waters. Since IDL's findings, conclusions and decision are sufficiently detailed to demonstrate that it considered the applicable standards and reached a reasoned decision, we find that the decision was not arbitrary and capricious and was based on substantial evidence in the record.

B. Establishing a Need for Permanent Moorage
Brett next argues that IDL erred in finding that the Association established a need for permanent moorage, since there were not sufficient findings based on substantial evidence in the record regarding the navigational or economic necessity or justification for the Association's requested permit. IDL is directed to balance several factors when determining the necessity of a proposed navigational encroachment. The pertinent rules provide:
It is the express policy of the State of Idaho that the public health, interest, safety and welfare requires that all encroachments upon, in or above the beds or waters of navigable lakes of the state be regulated in order that the protection of property, navigation, fish and wildlife habitat, aquatic life, recreation, aesthetic beauty and water quality be given due consideration and weighed against the navigational or economic necessity or justification for, or benefit to be derived from the proposed encroachment.
IDAPA 20.03.04.011.01; See also I.C. § 58-1301.
It is troubling that the Association did not initially seek permission to amend the permit before selling moorage to the two large houseboats on the east side of the boardwalk when, clearly, it did not have authority to do so. Nevertheless, it appears from the record that IDL considered the location of the docks, the number of slips, the navigability of the lake in that area, and concluded that the Association had demonstrated a need for permanent moorage on the east side of the boardwalk. It further appears that IDL did take into consideration Brett's concerns, but also concluded that mooring large vessels in the interior of the Marina was difficult due to the congestion from 90 slips jutting off a crowded boardwalk. IDL was entitled, based on evidence in the record, to conclude that it was necessary to amend the encroachment permit and we find that determination was not arbitrary or capricious.

C. Weighing Benefits Against Adverse Affects
Brett urges that IDL erroneously failed to measure or quantify the benefit to the Association to be gained by amending the permit, or address how such benefit outweighs the injury occasioned to Brett's property even if the vessels at issue are moored outside Brett's littoral property line. IDL is required to balance the competing interests involved while determining whether to approve permits for navigational encroachments. See I.C. § 58-1301, et seq.; IDAPA 20.03.04.011. Brett primarily raises economic concerns with the proposed encroachment, arguing that permitting the moorage of the two vessels in question physically behind his home would significantly diminish the value of his property.
While the Lake Protection Act certainly contemplates that IDL will weigh the economic benefits and detriment of a proposed navigational encroachment, it is not the only factor considered in the determination. IDL must weigh environmental, navigational, recreational and other impacts associated with a proposed encroachment. Here, IDL adequately weighed the evidence, measuring the impact of the amended permit against the possible damage to Brett's property and Brett's enjoyment of his property, and there was nothing improper, arbitrary, or capricious in the conclusion that the encroachment benefits outweighed the adverse effects on Brett. Indeed, the decision to move the vessels at issue further waterward was an effort to balance out the interests and to permit the use, while attempting to ameliorate the adverse consequences to Brett. IDL, based on its experience and expertise, is in the best position to weigh the competing *812 interests involved in determining whether to approve additional encroachments, and we will not independently evaluate those decisions unless they are not supported by the record or constitute an abuse of discretion.

D. Attorneys Fees
The Association requests attorney fees on appeal pursuant to Idaho case law mandating that "[a]ttorney fees are awardable if an appeal does no more than simply invite an appellate court to second-guess the trial court on conflicting evidence." See Sun Valley Shamrock Resources, Inc. v. Travelers Leasing Corp., 118 Idaho 116, 120, 794 P.2d 1389, 1393 (1990); See also Anderson v. Larsen, 136 Idaho 402, 408, 34 P.3d 1085, 1091 (2001). From the cases cited, it appears the Association is requesting fees pursuant to § 12-121. However, attorney fees are not available to a party on appeal from an agency decision under I.C. § 12-121. Staff of Idaho Real Estate Comn. v. Nordling, 135 Idaho 630, 637, 22 P.3d 105, 112 (2001); See also Lowery v. Board of County Comm'rs, 117 Idaho 1079, 793 P.2d 1251 (1990). Moreover, Brett presented legitimate issues for consideration on appeal and, therefore, we decline to award the Association their fees.

IV.

CONCLUSION
IDL correctly determined the location of the littoral boundary between the two subject properties before approving the requested encroachment permit, by recognizing the Meckel survey as a fair apportionment of the littoral rights of the parties. IDL's conclusions, regarding the Association's need for permanent moorage and weighing the benefits and harms of the proposed permit, were not arbitrary, capricious, or erroneous and are supported by the record. IDL's order approving the amended encroachment permit is affirmed. We award costs on appeal to Respondents.
Chief Justice SCHROEDER, and Justices EISMANN, BURDICK and JONES concur.