[No. 33340. *En Banc.* May 3, 1956.]

HOWARD B. SNIVELY *et al., Appellants,* v. ALEX JABER, *Respondent and Cross-appellant.*

J. HOWARD SNIVELY, *Appellant,* v. ALEX JABER, *Respondent and Cross-appellant.*[1]

[1]Reported in 296 P. (2d) 1015.

*Lycette, Diamond & Sylvester* and *Lyle L. Iversen,* for appellants.

*Wright & Wright,* for respondent and cross-appellant.

*The Attorney General, Joseph T. Mijich, Assistant, Olwell & Boyle, Lee Olwell, Morrissey, Hedrick & Dunham, John Hedrick, Pebbles & Swanson, Harold A. Pebbles, and Landon & Birdseye, amici curiae.*

ROSELLINI, J.—J. Howard Snively and his two sons, the plaintiffs in these consolidated actions, are the owners of a tract of land situated on the north shore of Angle lake, a nonnavigable lake in King county. They have subdivided the tract into residential lots, which they have been endeavoring to sell. On the easterly end of the tract they have constructed a summer home, a pier, rafts, and a boat house.

The defendant is the owner of a summer resort which is situated at the westerly end of the Snively tract. He operates a dance hall, picnic grounds, and a swimming area, and maintains approximately thirty rowboats which he rents to the public. The resort has been in existence since 1919. The plaintiffs acquired their adjoining property in 1926.

The complaints alleged repeated trespasses on the part

of the defendant's licensees, who go upon that portion of the lake under which the plaintiffs hold title to the bed to fish and sometimes anchor their boats, and who go ashore on the plaintiffs' land and utilize it for picnicking and other purposes, leaving debris and sometimes damaging the improvements which the plaintiffs have erected.

The complaints further alleged that the defendant's rafts and floating equipment project over the boundary between the plaintiffs' portion of the lake bed and the defendant's portion, and that on two occasions in the past this floating equipment became unmoored and washed up on the shore of the plaintiffs' property, where it remained through the greater part of two winters. The plaintiffs alleged that the resort constitutes a nuisance unreasonably interfering with their use and enjoyment and depreciating the value of their property, making it impossible to sell the lots nearest the resort. They sought an injunction against those features of the defendant's business which they alleged to be objectionable and claimed various items of damage.

After hearing the evidence, the trial court determined that the plaintiffs were entitled to nominal damages for trespasses, personal inconvenience, and annoyance. The renting of boats was enjoined for a period of approximately two years, at the end of which time, the injunction would be dissolved on a trial basis. It was the opinion of the court: that, if the renting of boats were discontinued, the picnicking and scattering of debris and other annoying occurrences would cease; that within two years a majority of the waterfront lots should be sold and developed; and that, since it appeared that these annoyances did not occur on those portions of the lake shore which were built up with residences, the renting of boats could be resumed after the property had been developed without a repetition of the trespasses.

The court refused to require the defendant to remove his rafts and floating equipment from the portion of the lake claimed by the plaintiffs, and made no finding as to whether this portion is in fact owned by the plaintiffs. The plaintiffs complain of this refusal and of the refusal to issue a permanent injunction. They contend that the injunction should

have extended to the practice of licensing owners of private boats to launch their boats through the defendant's property. In addition, they object to the amount of damages, claiming that substantial damages should have been awarded. The defendant's cross-appeal questions the propriety of the temporary injunction.

The court refused to enjoin the licensing of private boats for two reasons, which we deem adequate: First, there was no showing that the owners of private boats trespassed or annoyed the plaintiffs, and second, the practice of allowing boat owners to enter the lake was common among the riparian proprietors. Consequently, to have enjoined this practice on the part of the defendant would not have prevented the evil, if there was one.

The argument that the injunction should have been made permanent is based on two contentions: (1) that there is nothing in the record to show that the nuisance will cease when the area has been built up; and (2) that these boats will inevitably go upon the portion of the lake owned by the plaintiffs, as they have in the past, and that this constitutes a continuing trespass entitling the plaintiffs to a permanent injunction.

The defendant answers the first of these contentions by pointing out that there are approximately two hundred residences on the lake, and the evidence shows that the owners of these residences have not been unduly bothered by the boaters. The court reasonably concluded that, when the lots are improved and occupied, they will be no longer attractive to picnickers and other trespassers.

It was decided in *Snively v. State,* 167 Wash. 385, 9 P. (2d) 773, that, since Angle lake is nonnavigable, the abutting owners own the bed of the lake. The second contention of the plaintiffs is based upon the theory that, since they own a portion of the bed of the lake, they have the exclusive right to use the surface of the lake.

This is a case of first impression in the state of Washington and a question of great importance to every riparian owner and licensee on all nonnavigable lakes of this state. While it is true that plaintiffs own a portion of the lake bed,

does it follow that they have the exclusive proprietary right to use waters of the lake over their portion of the bed?

RCW 90.04.020, which is the water code of Washington and was first enacted in 1917, reads:

"The power of the state to regulate and control the waters within the state shall be exercised as hereinafter in this title provided. Subject to existing rights, *all waters within the state belong to the public,* and any right thereto, or to the use thereof, shall be acquired only by appropriation for a beneficial use and as provided in this title. As between appropriations, the first in time shall be the first in right. Nothing in this title shall lessen, enlarge, or modify the rights of a riparian owner existing as of June 6, 1917, or any right however acquired existing as of that date, except that they shall be subject to condemnation for public use, and the amount and priority thereof may be determined as hereinafter provided." (Italics ours.)

This is a recognition by the legislature of the limitation upon the common-law right of riparian owners.

In *Gin S. Chow v. Santa Barbara,* 217 Cal. 673, 22 P. (2d) 5, which gives a history of the limitation of riparian rights in many cases, it is stated:

"There is nothing novel about the limitation of the riparian right to a reasonable, beneficial use of water. Other western states which first adopted the common-law doctrine of riparian rights have effectually changed it to meet modern conditions.

"In the state of Washington the earlier cases were not in harmony, but whatever confusion existed was set at rest in *Brown v. Chase,* 125 Wash. 542 [217 Pac. 23], where the court held, 'that the waters of non-navigable streams in excess of the amount which can be beneficially used, either directly or prospectively, within a reasonable time, are subject to appropriation for use on non-riparian lands.' This rule was reaffirmed in *Proctor v. Sim,* 134 Wash. 606."

The case of *Brown v. Chase,* 125 Wash. 542, 217 Pac. 23, dealt with appropriation of water from a nonnavigable stream for use on nonriparian land, and *Proctor v. Sim,* 134 Wash. 606, 236 Pac. 114, dealt with riparian rights upon a nonnavigable lake. In the latter case, referring to *Brown v. Chase,* this court said:

"We believe that its doctrine is perfectly sound and will work to the good of the state at large and will deprive no one of any rights which he may justly claim."

While these cases and the water code do not control the issue presented here, they are persuasive, since they reflect the attitude which the legislature and this court have taken toward the question of private ownership of natural bodies of water.

In *In re Martha Lake Water Co.*, 152 Wash. 53, 277 Pac. 382, we held that the riparian owners were entitled to be compensated for damages caused to their properties through interference with bathing, boating, swimming, and fishing rights when the water in a nonnavigable lake was lowered by reason of a lawful appropriation of the water for use on nonriparian land.

In *In re Clinton Water District*, 36 Wn. (2d) 284, 218 P. (2d) 309, we held that the rights of riparian owners to boat, bathe, swim, and fish in a nonnavigable lake are vested rights and the owners thereof are entitled to damages when such rights are curtailed under the power of eminent domain. The court stated that

". . . many rights may be exercised and enjoyed which have always been recognized as riparian rights, reasonable use and due regard for similar rights of others being the standard of conduct."

The plaintiffs strongly urge that this court should follow *Tripp v. Richter*, 158 App. Div. 136, 142 N. Y. S. 563; *Smoulter v. Boyd*, 209 Pa. 146, 58 Atl. 144, 66 L. R. A. 829; and *Walden v. Pines Lake Land Co.*, 126 N. J. Eq. 249, 8 A. (2d) 581, which hold that a riparian owner can exclude anyone from the lake above that portion of the bed which he owns. The plaintiffs further urge that they can fence off their portion of the lake under the rule applied in *Griffith v. Holman*, 23 Wash. 347, 63 Pac. 239, a case in which we held that an owner of land across which an unmeandered stream flows has the exclusive right of fishery therein. The holding of that case is justified under Laws of 1891, chapter 120, § 3, p. 217 [*cf.* RCW 90.28.160], which provides:

"That owners of land or their agents shall have the right

to fence across all unmeandered streams at any time when such streams are not used for a public highway, or by making a fence that will not be an obstruction."

However, the holding has no application in a case involving a large lake surrounded by many riparian owners.

The adoption of the rule urged by the plaintiffs would in effect destroy all of the rights of riparian owners in non-navigable lakes except the right of appropriation. What practical value would the vested rights to boat, swim, fish, and bathe, have to any riparian owner if such rights were restricted to his fenced-in pie-shaped portion of the lake?

The rule adopted in *Beach v. Hayner*, 207 Mich. 93, 173 N. W. 487, 5 A. L. R. 1052, seems to be more consistent with our prior pronouncements on rights of riparian owners than does the rule urged by the plaintiffs. In the *Beach* case, *supra*, it was held that, where there are several riparian proprietors on an inland lake, such proprietors and their lessees and licensees may use the surface of the whole lake for boating and fishing, in so far as they do not interfere with the reasonable use of the waters by the other riparian owners. In concluding that the rules applicable to streams cannot be practicably applied to lakes, the court adopted the reasoning of Mr. Justice Campbell's dissent in *Sterling v. Jackson*, 69 Mich. 488, 37 N. W. 845:

"But lakes have no thread, and, while there is usually no difficulty in fixing equitable bounds near the shore, it cannot be done, by any mathematical process, over any considerable extent of the lake; and if—which does not often happen—there is any occasion for making partition of the surface, it can only be reached by some measure of proportion requiring judicial or similar ascertainment, and not by running lines from the shore. Small and entirely private lakes are sometimes divided up for such purposes as require separate use; but for uses like boating, and similar surface privileges, the enjoyment is almost universally held to be in common. This was held by the house of lords in *Menzies v. Macdonald*, 36 Eng. Law & Eq. 20. It was there held that, for all purposes of boating and fishing, the whole lake was open to every riparian owner."

We hold that, with respect to the boating, swimming, fishing, and other similar rights of riparian proprietors upon

a nonnavigable lake, these rights or privileges are owned in common, and that any proprietor or his licensee may use the entire surface of a lake so long as he does not unreasonably interfere with the exercise of similar rights by the other owners. This rule does not have the effect of making the nonnavigable lake public, since a stranger has no right to enter upon the lake without the permission of an abutting owner. The rule we have announced affords equal protection to the interest of all riparian owners in the use of the water and seeks to promote the greatest beneficial use by each with a minimum of harm to other owners.

The plaintiffs assign error to a finding made by the court to the effect that they have not been damaged by the projection of the defendant's rafts and floats east of the extension of the section line which divides the property of the plaintiffs from that of the defendant on shore.

The plaintiffs insist that the trial court should have ordered the removal of the defendant's rafts, having found that they are anchored across the section line. The trial court refused to make a finding as to the true boundary between that portion of the lake bed owned by the plaintiffs and the portion owned by the defendant, and rightly so. While it is true that this court in *Snively v. State, supra,* has determined that Angle lake is nonnavigable and that the abutting owners own the bed of the lake, the bed has never been apportioned among the owners, and their respective boundaries are as yet indeterminate. Since the contour of the lake is uneven, a formula would have to be devised to apportion the lake bed ratably among the owners before such boundaries could be set. See *Spath v. Larsen,* 20 Wn. (2d) 500, 148 P. (2d) 834; and *Grand Rapids Ice & Coal Co. v. South Grand Rapids Ice & Coal Co.,* 102 Mich. 227, 60 N. W. 681. To properly make such a determination, it would probably be necessary to join all of the riparian owners as parties to the action. In *Seattle Factory Sites Co. v. Saulsberry,* 131 Wash. 95, 229 Pac. 10, the principal question presented was whether the court properly brought in the owners of the adjoining properties as parties to a dispute concern-

ing the lateral boundaries of shore lands lying in a cove on Lake Washington. We said in that case:

"We are of the opinion that the admitted allegations of the complaint necessarily incidentally draw in question each and every boundary line dividing all of the tracts of shore land; that a proper determination of one necessarily calls for the determination of all others; and hence that it was proper to bring in the owners of all the tracts as parties to the action, to the end that the decree ultimately to be rendered should become effective as against all such owners."

Since the plaintiffs' proof fell short of demonstrating that the rafts are anchored on their property, and since they were unable to convince the trial court that they are in any way damaged by the presence of the rafts in their present position, the court correctly refused to order the defendant to remove these structures.

■ Plaintiffs contend that the court erred in awarding only nominal damages for the nuisance created by the defendant's business, and further contend that the court erred in failing to award them the reasonable rental value of their property, based upon their claim that it was "occupied" by the defendant's rafts and floating equipment, which were grounded in front of the plaintiffs' lots for the greater part of two winters.

While the plaintiffs earnestly urge that the annoyances inflicted upon them were severe and substantial damages should have been awarded, the trial court, which had the witnesses before it and viewed the premises, was apparently not convinced. As to the damage caused by the presence of the rafts near the unused beach during the winter months, the evidence in support of the claim for damages was that of a real-estate agent, who testified that the "rule of thumb" for determining rental value of property is ten per cent of the investment, and that the lots affected would, under that rule, bring a rental of $300 to $350 per month. The court rightly remarked at that point that such a measure of damage was entirely irrelevant, since (1) the defendant was not in possession of the plaintiffs' property, and (2) the property

was not rentable in its undeveloped state. Upon the record, we cannot say that the court erred in finding that the plaintiffs have not been damaged by the presence of these rafts near the beach and that, as a result of the nuisance, the plaintiffs have suffered only nominal damages.

On cross-appeal, the defendant contends that the court erred in finding that his renting of boats creates a nuisance.

The defendant argues that, since the boats rented by him constitute only a small proportion of those regularly operated upon the lake, it is unfair to enjoin his boat rental operation, and, furthermore, that this measure will not prevent the occurrences of which the plaintiffs complain. However, there was evidence that the defendant's, boats were tied to the pier and were docked on the beaches of the plaintiffs, and that the occupants were found ashore engaging in offensive activities. That the trespasses were committed by persons using boats rented by the defendant, was shown by a number of pictures introduced in evidence by the plaintiffs.

The evidence was sufficient to justify the court's finding that the users of these boats were largely responsible for the nuisance; and the injunction was limited in such a way as to protect the interests of the defendant in so far as it could be done, while at the same time giving reasonable protection to the interests of the plaintiffs.

The judgment is affirmed, without costs to either party.

All Concur.