[No. 40103. Department Two. October 4, 1968.]

GERARD BACH et al., *Respondents*, v. STEVE SARICH, JR.,
*et al., Appellants.**

* Reported in 445 P.2d 648.

*Ferguson & Burdell,* by *Edward Hilpert, Jr.* and *Ralph W. Johnson,* for appellants.

*Benjamin P. Shuey,* for respondents.

WILLIAMS, J.†—This appeal arises out of a suit to enjoin further construction of an apartment building which would extend out over the surface of Bitter Lake in Seattle, and to compel removal of the existing structure.

Bitter Lake is a nonnavigable, natural body of water about 19 acres in area, situated in the north section of the city of Seattle. It is unmeandered, which means that in the original federal government survey the surveyors did not locate the shoreline, but merely ran the government section lines across the lake. As a result many shoreline property owners also own subdivided portions of the lake bed. The lake is surrounded principally by single residences, together with a few multiple residences, a public school ground, and a small city park. Residents of the area have long used the entire lake surface for recreational activities.

The plaintiffs are 24 property owners who own upland abutting the lake and, in some instances, parts of the lake bed, or who otherwise have access rights to the lake by reason of an easement to the lake shore. Defendants own a parcel of land abutting on the east side of the lake at the south end, about two-thirds of which is upland and one-third lake bed. Title is traced to an 1872 federal government patent, which made no reference to the lake.

The south end of the lake, including defendants' property, has been business zoned for many years, and was formerly

†Judge Williams is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

operated as Playland Amusement Park. The property is currently zoned commercial general (CG) by the city of Seattle. In zoning the land around the lake the city ran its zoning lines across the lake surface so that the entire lake bed is zoned. Defendants' submerged land is zoned commercial general, while other portions of the lake bed are zoned residential.

In August, 1966 defendants purchased the property in question, after having procured preliminary architectural plans for the construction of four apartment buildings. Apartment buildings Nos. 1 and 2 were to be constructed partly on the upland, but would extend approximately 130 feet out into the lake, supported on two finger-like piers secured by cement pilings. Apartments Nos. 3 and 4 were to be constructed entirely on the upland abutting the lake. Mortgage commitments were obtained based on these plans, and on June 12, 1967, a building permit was issued by the city of Seattle.

On June 5, 1967, excavation of the upland was commenced and on June 8 or 9 dirt was first pushed into the lake about 25 feet in order to form a base or pad. Some of the plaintiffs immediately protested to defendants and began making an investigation to determine the extent of defendants' construction plans. The protests went unheeded so plaintiffs on July 5, 1967, brought an action to enjoin defendants from filling or building over the surface of the lake. In conjunction with that action they posted a $1,000 bond and obtained an exparte temporary order restraining the defendants from interfering with the surface area and shoreline of Bitter Lake.

The motion for a temporary injunction was heard on July 15, 1967, by a different department of the superior court than that which later heard the case on the merits. The court denied the motion but delayed the effective date of the order so that plaintiffs might petition this court for a writ of review. On July 20, 1967, that petition was denied by this court on procedural grounds. It was understood at

the time that the ruling did not reach the merits of the petition.

On July 21, 1967, the temporary restraining order was dissolved. Plaintiffs then made every effort to get the case to trial and in fact secured a substantially earlier trial date than would have been possible through the normal progression of the trial docket in King County. Trial was commenced on October 10, 1967.

Pending the trial on the merits, defendants proceeded as rapidly as possible with the construction of apartment No. 1 and the concrete slab to support it. The slab projects out into the lake approximately 130 feet and is 77 feet wide. Beneath it the lake is filled with dirt, and pilings of steel beams are used to support it. The slab will be 1.18 feet above high water and 6.18 feet above low water. The apartment constructed on the slab will be three stories in height. At the time of trial it was planned that both apartments Nos. 1 and 2 would extend out over the water. However, in oral argument in this court defendants stated that the plans for apartment No. 2 had been modified so that it would be constructed entirely on upland.

The trial court determined that defendants had no right to build out into Bitter Lake, and enjoined them from further construction over the surface of the lake. In addition, defendants were ordered to remove the existing structure and earth fill, which had been put there during the period prior to the trial.

Defendants' 12 assignments of error are directed to (1) the trial court's determination that defendants had no right to build out into Bitter Lake, (2) the remedy granted in view of hardship caused to defendants relative to hardship plaintiffs would suffer if the mandatory injunction were denied, (3) prejudice of the trial judge in view of his personal experience as attorney in a prior case which dealt with surface rights of lake shore owners, (4) the trial court's findings that defendants disregarded protests of plaintiffs and the pendency of this suit, and its failure to include a specific finding on defendants' good faith, and (5) the trial

court's failure to find adverse possession of the area in question by defendants' predecessor in title.

In the challenge to the trial court's determination that defendants had no right to build out into Bitter Lake, defendants emphasize the effect of the commercial zoning imposed on their property. Defendants contend that their apartment is a riparian use, and that reasonableness is the test for its permissibility. They further contend that reasonableness in this case is a legislative determination expressed in the city zoning ordinance. In other words, the Seattle City Council, by conferring a commercial general zoning classification on this property, and issuing a building permit, determined that an apartment is a reasonable and proper use of this tract, which includes lake bed property.

Riparian rights and privileges are conferred upon a property owner by virtue of the contiguity of his property to a body of water. *Mayer v. Grueber*, 29 Wis. 2d 168, 138 N.W.2d 197 (1965). Although we have never promulgated an all-inclusive definition of riparian rights, we have previously recognized as riparian rights on nonnavigable lakes the rights of swimming, fishing, boating, and bathing. *Snively v. Jaber*, 48 Wn.2d 815, 296 P.2d 1015, 57 A.L.R.2d 560 (1956). Further, these rights have been characterized as vested property interests, included in the protection afforded by Const. art. 1 § 16, which provides that private property shall not be taken or damaged for public or private use without just compensation. *In re Clinton Water Dist.*, 36 Wn.2d 284, 218 P.2d 309 (1950).

We cannot agree that defendants' apartment constructed over water constitutes a riparian use, or that its permissibility comes within a rule of reasonableness as determined by the Seattle zoning authorities.

Mere proximity of the apartment to the water does not render it a riparian use. With respect to a structure, such a use must be so intimately associated with the water that apart from the water its utility would be seriously impaired. This is not the case with defendants' prospective use. The utility of the apartment is in no way dependent

upon the waters of Bitter Lake, and its utility as an apartment would be in no way impaired apart from this lake. This is evidenced by the fact that apartments Nos. 2, 3 and 4 are entirely on upland property.

Nor may defendants justify the presence of their apartment by the commercial zoning classification imposed by the city of Seattle or by the issuance of a building permit.

 All riparian owners along the shore of a natural, nonnavigable lake share in common the right to use the entire surface of the lake for boating, swimming, fishing, and other similar riparian rights so long as there is no unreasonable interference with the exercise of these rights by other respective owners. *Snively v. Jaber, supra; Botton v. State*, 69 Wn.2d 751, 420 P.2d 352 (1966).[1] These rights are vested property rights, and may not be taken or damaged for public or private use without just compensation. *In re Clinton Water Dist., supra.* It follows, therefore, that while the city of Seattle might regulate the exercise of these rights by means of its police power, it may not totally divest plaintiffs of them through the mechanisms of zoning. Indeed, the effect of this case, if we were to follow defendants' reasoning, would be to divest plaintiffs of valuable property rights for the private use and benefit of defendants. Such a result is clearly contrary to the law, and we are certain was not intended by the Seattle zoning authorities when the commercial general classification was placed on defendants' property.

Defendants next assert error in the trial court's choice of remedy, in that defendants were required to remove the structure it placed out over the surface of the lake. It must be noted, in response to this assertion, that since we have determined that defendants' apartment does not con-

---

[1] Other jurisdictions which have adopted this same rule are represented by the following cases: *Harris v. Brooks*, 225 Ark. 436, 283 S.W.2d 129 (1955); *Burt v. Munger*, 314 Mich. 659, 23 N.W.2d 117 (1946); *Flynn v. Beisel*, 257 Minn. 531, 102 N.W.2d 284 (1960); *State Game & Fish Comm'n v. Louis Fritz Co.*, 187 Miss. 539, 193 So. 9 (1940); *Duval v. Thomas*, 114 So.2d 791 (Fla. 1959); and *Improved Realty Corp. v. Sowers*, 195 Va. 317, 78 S.E.2d 588 (1953).

stitute a riparian use, it becomes in effect an encroachment upon plaintiffs' common rights to use this portion of the lake surface for purposes of riparian enjoyment. In view of this, it is defendants' contention that nonetheless, an application of the doctrine of relative hardship, or balancing the equities, requires that they not be enjoined to remove the existing structure now in place. Although it is not clear from the evidence, the amount of loss might be substantial that defendants could suffer if unable to complete apartment No. 1. Estimates by the plaintiffs based on defendants' figures fix the maximum possible loss at approximately $100,000. Defendants on the other hand contend they will lose in excess of $250,000. The evidence indicates, however, that when it became apparent that defendants faced a lawsuit to halt construction of apartment No. 1 with the ever existing possibility that they might lose, they took no action to mitigate their potential loss by attempting to renegotiate or cancel the construction contracts or other financial commitments. At that time only a small proportion of the total financial commitment had actually been expended and the remaining potential loss depended on the binding effect of the commitments, most of which were oral in nature, the rigidity of the other contracting parties position, and the feasibility of altering construction plans.

From the very commencement of defendants' construction they were aware of the protests of other riparian owners. The encroaching structure did not exist at the time of suit, but was built during the pendency of this suit. Defendant contractor, Mr. Ray Lotto, testified that after the temporary restraining order was dissolved "we proceeded as fast as we could, because, at that time, we already lost two weeks."

Thus, defendants proceeded to construct the apartment in question with full knowledge that their right to do so was contested and that there was a real likelihood, in view of our holding in *Snively v. Jaber, supra,* that the case on the merits would be decided against them. In addition, the court in its oral opinion dissolving the temporary restrain-

ing order, pointed out that the case was going to be appealed, would be a landmark case, and the Supreme Court might look at it differently. During oral arguments defendants' counsel admitted that they knowingly took a risk by continuing construction while the case was pending on the merits, and indeed, there is no other possible interpretation of defendants' conduct. Their explanation was that although not much construction had been done on apartment No. 1 they were already financially committed to the entire project and felt they had to take the risk.

■ The benefit of the doctrine of balancing the equities, or relative hardship, is reserved for the innocent defendant who proceeds without knowledge or warning that his structure encroaches upon another's property or property rights. *City of Dunsmuir v. Silva,* 154 Cal. App. 2d 825, 317 P.2d 653 (1957); *Winthers v. Bertrand,* 239 Ore. 97, 396 P.2d 570 (1964). Under the circumstances of this case, defendants are not entitled to evoke the benefit of this doctrine.

■ Defendants next assert that the bias of the trial judge prevented them from having a fair trial. This assignment is based on the prior experience of the trial judge as counsel for Dr. J. Howard Snively, who was subsequently a party in *Snively v. Jaber, supra.* Although the trial judge did not represent Dr. Snively in that suit, he did offer legal advice to him. Defendants argue that that experience prejudiced the judge's views on the issue of defendants' good faith and caused him to prejudge the case even before the trial started.

RCW 4.12.040 provides in part:

> No judge of a superior court of the state of Washington shall sit to hear or try any action or proceeding when it shall be established as hereinafter provided that said judge is prejudiced against any party or attorney, or the interest of any party or attorney appearing in such cause.

Clearly, defendants show no prejudice which comes within the requirements of this statute. Merely because a judge has had occasion to study a point of law and offer advice based on his interpretation of it is no grounds for disqualification. This assignment is without merit.

■ Defendants charge error in the trial court's refusal to find that defendants' predecessor in interest, Playland Amusement Park, established the exclusive right to use the disputed portion of the lake by adverse possession. We find no merit to this contention in light of testimony of a former park policeman that his intentions were only to prevent persons from entering the park without paying the entrance fee. There was no evidence that other riparian owners were ever prevented from using the entire surface of the lake, or that the operators of Playland Amusement Park ever intended to assert any proprietary rights over portions of the surface abutting its shore. Indeed, certain residents of Bitter Lake testified that they had always used the entire surface of the lake, including portions over the area owned by defendants, even while Playland was in operation. In any event, it was a disputed question of fact and as there was substantial evidence to support the finding of the trial court, it will not be disturbed on appeal. *State ex rel. Carroll v. Seattle Hotel Bldg. Corp.*, 41 Wn.2d 595, 250 P.2d 982 (1952).

Defendants next assign error to the trial court's refusal to grant a new trial on the basis of newly discovered evidence. The evidence was the testimony of a daughter of defendants' predecessor in interest and related to the question of adverse use of that portion of the lake in dispute. The substance of her testimony was before the trial judge by way of affidavit in support of the motion. It was to some extent cumulative in nature, and we do not feel that the court abused its discretion in denying the motion.

Defendants finally argue that under *Hughes v. Washington,* 389 U.S. 290, 19 L. Ed. 530, 88 Sup. Ct. 438 (1967), the federal common law controls the result here; and that under the federal common law the defendants have a right to build their apartment on a fill on their portion of the lake bed.

■ This contention is based on the fact that defendants' title is to upland property and submerged land, and is traced to an 1872 federal government patent. This patent was

issued prior to Washington statehood, and made no reference to the lake.

In *Hughes, supra,* the issue presented was whether federal or state laws governs the ownership of accreted land, gradually deposited by the ocean on adjoining upland property conveyed by the United States to petitioner's predecessor in title prior to Washington statehood. The United States Supreme Court held that federal law applied, and that under federal law petitioner was entitled to the accretion that had gradually formed along her ocean-front property.

The *Hughes* decision is in no way applicable to the instant case. We are not concerned here with the ownership of land or the extent or validity of title created by a federal act. As stated by Mr. Justice Stewart, concurring in *Hughes,* 389 U.S. at 295:

> Surely it must be conceded as a general proposition that the law of real property is, under our Constitution, left to the individual States to develop and administer. And surely Washington or any other State is free to make changes, either legislative or judicial, in its general rules of real property law, including the rules governing the property rights of riparian owners. Nor are riparian owners who derive their title from the United States somehow immune from the changing impact of these general state rules. *Joy v. St. Louis,* 201 U. S. 332, 342. For if they were, then the property law of a State like Washington, carved entirely out of federal territory, would be forever frozen into the mold it occupied on the date of the State's admission to the Union.

We must, therefore, conclude that there was no error in the trial court's determination of the property rights of the riparian owners on Bitter Lake, nor in the remedy afforded in the form of a mandatory injunction.

The judgment is affirmed.

FINLEY, C. J., WEAVER, HUNTER, and McGOVERN, JJ., concur.

---

January 24, 1969. Petition for rehearing denied.