92 P.3d 780 (2004)
Roger F. and Diane Lisle PETERSON, husband and wife; Richard D. Hill and Lara E. Foote, husband and wife; John E. Ederer and Jean C. Ederer, husband and wife; Carl North and Ethel M. North, husband and wife; and Wagih Abu-Rish and Eileen J. Abu-Rish, husband and wife; and the marital communities composed thereof, Respondents,
v.
Robert A. KOESTER and Judith G. Koester, husband and wife, and the marital community composed thereof, Appellants.
No. 50941-1-I.
Court of Appeals of Washington, Division 1.
May 17, 2004.
Publication Ordered June 15, 2004.
*781 Jerret Sale, Matthew Sekits, Seattle, for appellants.
Charles Watts, Oseran, Hahn, Spring & Watts, Bellevue, for respondents.
BAKER, J.
Robert and Judith Koester purchased property in a subdivision governed by covenants that required lot owners to obtain approval from an Architectural Control Committee (ACC) before beginning construction. The Koesters built a pool and mechanical room, and were sued by their neighbors. Although the Koesters had submitted plans, the trial court found that they had deliberately and knowingly violated the consent to construction covenant because the final construction was based on revised plans that had not been properly submitted for approval. The trial court ordered the Koesters to return the mechanical room to its originally proposed size, placement, and design, and reduce the height of the improvements (measured in elevation above sea level) from the unapproved elevation of 236.5 feet to the originally proposed 231.5 feet. But a consent to construction covenant may not be used to enforce a restriction more burdensome than imposed by a specific covenant, such as a height restriction covenant.
We affirm the trial court's finding that the Koesters knowingly did not submit the revised plans 30 days before beginning construction. We also affirm the court's order *782 to return the mechanical room to its originally proposed placement and size. But because the improvements remained under the maximum height of 240 feet in elevation specified by the covenants, we conclude that the court erred by ordering the Koesters to reduce the height of the improvement. We reverse that order and remand to the trial court to determine a remedy consistent with this opinion.

I
The Koesters owned land in a subdivision in Kirkland that had been created by John "Ted" and Jean Ederer. The Ederers drafted and recorded a Declaration of Covenants, Conditions and Restrictions ("CCRs") when they created the subdivision. Section 7 of Article III requires that plans for all improvements must be submitted to the ACC 30 days before the proposed construction starting date. Section 7 further requires that no construction may begin without the written approval of the majority of the ACC, unless the ACC fails to respond within 30 days. If 30 days pass without response, the construction may proceed, but it may not violate the square footage and view restrictions. Ted Ederer was the sole member of the ACC.
The CCRs divide each lot into two portions, the part upon which the residence may be built, and the remainder. The CCRs specify that recreational facilities, such as a pool, may only be built on the remainder of the southern portion of the Koesters' lot, and may not be higher than 240 feet in elevation.
The Koesters decided to build a pool, patio, mechanical room, and surrounding structures on the southern portion of their lot. Their architect, James Bryant, originally determined that the pool and surrounding structures would reach an elevation of 231.5 feet. He testified that sometime after September 6, 1999, he submitted plans with a revised elevation of 236.5 feet to the ACC. He further testified that he and Ederer spoke over the phone, specifically referring to the 236.5 foot elevation.
Ederer testified to the contrary. He testified that although he received revised plans for the pool and other structures shortly before September 29, 1999, those plans still specified an elevation of 231.5 feet. He further testified that he received the plans after the construction had begun on September 20, 1999. In his description of events in a letter to the Koesters on October 19, 1999, Ederer appeared to be unaware of the 236.5 foot elevation until October 18, 1999.
The Ederers and the other owners of property in the subdivision sued the Koesters. They moved for summary judgment requiring the Koesters to remove all improvements from the southern portion of the Koesters' lot. In the order granting partial summary judgment, the court concluded that the revised plans of the mechanical room detailing the "appearance of the exterior construction and design (specifically the siding and windows)" had not been properly submitted to the ACC. But the court reserved the issue of an appropriate remedy for trial.
After trial, but before the court entered its findings of fact and conclusions of law, the Koesters moved to reopen the evidence to admit a newly discovered document. The Koesters had found a copy of plans showing 236.5 feet as the elevation and date-stamped by the City of Kirkland. The court denied the motion.
The court found that the Koesters did not submit plans for a mechanical room with windows, siding, and larger than 48 square feet 30 days before construction as required by the CCRs. The Koesters also did not submit plans with the 236.5 foot elevation 30 days before they began construction. The court found that the Koesters were not an innocent party because they knowingly violated the consent to construction covenant. Based on these findings and the partial summary judgment, the court concluded that the plaintiffs were entitled to equitable relief and the court did not need to balance the equities. The court ordered the Koesters to remove or modify all improvements south of the residence so that none of the improvements were higher than 231.5 feet in elevation. The court further ordered that upon completion of the modifications, the mechanical room should not exceed 48 square feet, should be located to the north side of the *783 pool underneath the deck, and have no windows, siding or doors.
The court also ordered a special master to replace Ederer as the ACC for lot 1. The court further ordered that the special master did not have the authority to authorize any improvements on the southern portion of lot 1 in excess of 231.5 feet or to authorize a mechanical room larger than 48 square feet.

II
When "the trial court has weighed the evidence, our review is limited to determining whether substantial evidence supports the findings and, if so, whether the findings in turn support the trial court's conclusions of law and judgment."[1] Substantial evidence exists when the evidence is in "sufficient quantum to persuade a fair-minded person of the truth of the declared premise."[2]
The trial court found that even if the Koesters had submitted revised plans with the higher elevation to the ACC, they did not do so 30 days before construction started. Substantial evidence supports the trial court's finding.
Ederer testified that he received revised plans in late September 1999. But he testified that those plans listed an elevation of 231 feet, 6 inches. Ederer also testified that he saw construction begin on the southern half of the Koester property on September 20, 1999.
Bryant disagreed as to the elevation shown on the plans, but admitted that he could not have delivered the plans before he returned from vacation on September 6, 1999. Substantial evidence supports the court's finding that Ederer did not receive the plans 30 days before construction began on September 20th. Moreover, despite the conflicting evidence, substantial evidence supports the court's findings regarding the lack of notice of an elevation above 231.5 feet.
Nevertheless, we conclude that the court committed error by ordering the Koesters to reduce all improvements to the originally proposed height of 231.5 feet.
In Riss v. Angel,[3] our Supreme Court held that "covenants providing for consent before construction or remodeling will be upheld so long as the authority to consent is exercised reasonably and in good faith."[4] But the court also held that "[i]f covenants include specific restrictions as to some aspect of design or construction, the document manifests the parties' intent that the specific restriction apply rather [than] an inconsistent standard under a general consent to construction covenant."[5] Thus, a "construction covenant cannot operate to place restrictions on a lot which are more burdensome than those imposed by the specific covenants."[6]
By ordering the Koesters to reduce the elevation of the improvements to 231.5 feet because they did not submit revised plans for approval, the trial court attempted to use a consent to construction covenant to enforce a height restriction more burdensome than that specified by the height restriction covenant. This was error. Similarly, the court erred by limiting the special master's authority to approve changes above the 231.5 foot elevation. The trial court or special master may order remedies to mitigate the impact of the improvements, such as ordering the installation of trellises, lattice work, or other landscaping techniques, but the court may not order the Koesters to reduce the height of the improvement.
The court ordered the Koesters to modify the mechanical room as shown on the original plans, so that it is 48 square feet, and located on the north side of the pool underneath the deck adjacent to and directly west of the walkway from the residence to the pool. Further, the court ordered that the mechanical room could have no windows, siding, or doors.
*784 Unlike the trial court's order to reduce the height of the improvement, its order to return the mechanical room to the size, placement, and style consistent with the plans submitted for approval does not conflict with the holding in Riss. Moreover, the trial court's findings on this subject are supported by substantial evidence and its conclusions are supported by those findings. Therefore, we affirm the court's order regarding the mechanical room. We also affirm the court's conclusion that the special master should not have the authority to permit a mechanical room other than as already described in the plans submitted.
Next, the Koesters argue that the trial court erred by not balancing the equities. To determine whether the court erred by choosing not to balance the equities, we first determine if the findings of fact upon which the trial court based its conclusion are supported by substantial evidence. The court found that the Koesters were not an "innocent" party and therefore, it was not obligated to balance the equities.
The trial court found that the Koesters were aware of their obligation under the CCRs to seek out the approval of the ACC before construction. The Koesters were signatories on several amendments to the CCRs. At least three of the amendments resulted from a request by the Koesters for a variation from the CCRs. To obtain these amendments, the Koesters demonstrated a clear understanding of the amendment process and the requirements of the CCRs. Substantial evidence supports the court's finding that the Koesters were aware of their obligations under the CCRs.
In Bach v. Sarich,[7] our Supreme Court held that the "benefit of the doctrine of balancing the equities ... is reserved for the innocent defendant who proceeds without knowledge or warning that his structure encroaches upon another's property or property rights."[8] In Bach, the court found the defendants were not an innocent party because they had proceeded to construct an apartment building "with full knowledge that their right to do so was contested and that there was a real likelihood ... that the case on the merits would be decided against them."[9]
In Holmes Harbor Water Co. v. Page,[10] the defendants relied upon the representations of the builder that their home would not violate the height restriction.[11] The court found that the defendants had attempted to comply with the restrictions and had acted innocently.[12] The court further found that the plaintiffs had delayed in bringing the suit and that the cost of removing the violation was "exorbitant when compared with the slight violation of the covenant."[13]
The Koesters argue that their actions are distinguishable from those of the defendants in Bach and more like those of the defendants in Holmes Harbor. They argue that their improvements did not violate any height restrictions. They also argue that like the defendants in Holmes Harbor, they innocently relied upon their architect to deliver correct plans. The first part of the Koesters' argument relies on the idea that a violation of a height restriction is more egregious than a violation of a consent to construction covenant. This assumption is incorrect. Although the holding in Riss limited the application of consent to construction covenants, the holding also affirmed that consent to construction covenants are to be upheld by our courts.[14] When the Koesters defied the consent to construction covenant and began building before submitting plans with the revised elevation, they violated a covenant just as the defendants did in Bach.
*785 The second part of the Koesters' argument fails as well. In Holmes Harbor, the defendants relied on the builder's representation about the height of a house, something completely within the control of the builder. The Koesters claim to have relied on the architect to have delivered plans to the ACC. But delivering the plans was not out of the Koesters' control or abilities. Moreover, the Koesters were the party obligated to deliver the plans, not the architect. Furthermore, according to the ACC, the plans that were delivered by the architect did not have the revised elevations.
The Koesters also argue that they did not receive a written rejection of their construction plans until after the construction was completed. This fact has no bearing. In compliance with the CCRs, the Koesters submitted a plan with an elevation of 231.5 feet and a mechanical room of a certain design more than 30 days before beginning construction. They did not receive a written notice of rejection within 30 days, giving them tacit approval to build according to those plans, and only those plans. But the Koesters did not submit, at least not 30 days before beginning construction, a plan with the elevation of 236.5 feet and a revised mechanical room. Therefore, the ACC was not given the required 30 days to give a written notice of rejection.
The Koesters had used the amendment process several times before the construction of their pool and knew of their obligation to follow the consent to construction covenant. They did not comply with the covenant and knowingly built their pool to an elevation that had not been approved. They were not innocent parties who deserve a balancing of the equities. The trial court's findings are supported by substantial evidence and its conclusions are supported by those findings.
Next, the Koesters argue that the trial court abused its discretion by denying their motion to reopen evidence to accept a newly discovered document. When confronted with newly discovered evidence, the trial court is guided by CR 59(a)(4) which states that the trial court may grant a new trial on all or any of the issues because of "[n]ewly discovered evidence, material for the party making the application, which ... could not with reasonable diligence have [been] discovered and produced at the trial."[15] Our courts have held that a new trial will not be granted on the grounds of newly discovered evidence unless the evidence "(1) will probably change the result of the trial; (2) was discovered after trial; (3) could not have been discovered before trial even with the exercise of due diligence; (4) is material; and (5) is not merely cumulative or impeaching."[16]
Robert Koester testified that he gave revised plans with the 236.5 foot elevation to Bryant and to the City of Kirkland on September 3, 1999. He further notes that despite his testimony and despite Bryant's testimony, the trial court found that "[i]t was not until after all of the construction activities by Defendants Koester had taken place to increase the elevation of the pool, surrounding decks, and concrete retaining walls to an elevation of 236 feet, 6 inches, that the City of Kirkland became aware that such a change had been made unilaterally by Defendants Koester."
Before the court entered its findings, the Koesters found a copy of revised plans with the 236.5 foot height improvement bearing an original red "received" stamp by the City, and dated September 3, 1999. They moved to reopen evidence to admit this newly discovered document. They argue that the document is material because it relates to the timing of events. They further argue that the document could have changed the outcome of the trial because it corroborates Robert Koester's testimony. Specifically, they argue that the document provides physical evidence supporting Robert's testimony that he submitted the revised plans with the 236.5 foot elevation to the City of Kirkland on September 3, 1999, contrary to the court's finding. Because credibility regarding the timing of deliveries is important to this case, *786 the Koesters argue that the document should have been admitted.
The trial court's ruling rested within its sound discretion.[17] Although the plans with the received stamp could have provided support for Koester's testimony, it is not as useful a benefit as the Koesters argue. The fact that Robert Koester may have delivered the plans to the City does not prove that Bryant delivered them to Ederer. In the face of the other evidence that Ederer had not seen plans with the 236.5 foot elevation, such as correspondence in October between Koester and Ederer, it is unlikely that admission of the document probably would have changed the outcome of the trial. Therefore, the trial court did not abuse its discretion by denying the Koesters' motion to reopen the evidence.
Next, the Koesters challenge the trial court's award of attorney fees to the plaintiffs. The trial court may award attorney fees where there is a contractual basis.[18] The CCRs provide that the prevailing party is entitled to reasonable attorney fees and expenses.
If legal action is brought to interpret or enforce compliance with the provisions of this Declaration, the prevailing party shall be entitled to judgment against the other party for its reasonable expenses, court costs, and attorney's fees in the amount fixed by the Court.
A prevailing party is one who receives a judgment in his or her favor.[19] Although we are reversing the order to reduce the improvements to 231.5 feet, the respondents remain the prevailing party below. The trial court did not abuse its discretion.
But in addition to analyzing whether or not the lower court abused its discretion, we also assert our "supervisory role to ensure that discretion is exercised on articulable grounds."[20] In Mahler v. Szucs,[21] our Supreme Court affirmed the need for courts to "take an active role in assessing the reasonableness of fee awards" and to adhere to the lodestar methodology.[22] The court affirmed the rule that "the absence of an adequate record upon which to review a fee award will result in a remand of the award to the trial court to develop such a record."[23]
Although the trial court included a determination that the plaintiffs should be awarded reasonable attorney fees, it did not specify in the findings and conclusions how the attorney fees were computed. Therefore, we remand the fee award to the trial court to enter findings of fact and conclusions of law articulating the grounds under lodestar methodology on which it based its decision that the attorney fees were reasonable.
Both the appellants and the respondents request attorney fees under RAP 18.1. Where neither party wholly prevails, the "party that substantially prevails on its claims is the prevailing party."[24] Although the respondents prevail in terms of the mechanical room, the Koesters have prevailed with regard to the order forcing them to reduce the elevation of the improvements. Neither party has substantially prevailed on appeal. Therefore, we do not award attorney fees and costs for the appeal.
We affirm the trial court findings of fact, conclusions of law, and orders related to the mechanical room. But we reverse and remand to the trial court to determine a remedy that does not violate the holding in Riss, i.e., that does not use the general consent to construction covenant to enforce a restriction more burdensome than included in a specific covenant. We also remand the fee award for the court to add to the findings of fact and *787 conclusions of law the grounds for its determination of the reasonableness of the attorney fees under the lodestar methodology.
AFFIRMED in part, REVERSED in part.
WE CONCUR: AGID and COLEMAN, JJ.
NOTES
[1] Ridgeview Prop. v. Starbuck, 96 Wash.2d 716, 719, 638 P.2d 1231 (1982).
[2] Ridgeview, 96 Wash.2d at 719, 638 P.2d 1231.
[3] 131 Wash.2d 612, 934 P.2d 669 (1997).
[4] Riss, 131 Wash.2d at 625, 934 P.2d 669.
[5] Riss, 131 Wash.2d at 625-26, 934 P.2d 669.
[6] Riss, 131 Wash.2d at 625, 934 P.2d 669.
[7] 74 Wash.2d 575, 445 P.2d 648 (1968).
[8] Bach, 74 Wash.2d at 582, 445 P.2d 648.
[9] Bach, 74 Wash.2d at 581, 445 P.2d 648.
[10] 8 Wash.App. 600, 508 P.2d 628 (1973).
[11] Holmes Harbor, 8 Wash.App. at 602, 508 P.2d 628.
[12] Holmes Harbor, 8 Wash.App. at 606, 508 P.2d 628.
[13] Holmes Harbor, 8 Wash.App. at 606, 508 P.2d 628.
[14] Riss, 131 Wash.2d at 625-26, 934 P.2d 669.
[15] CR 59(a)(4).
[16] Graves v. Dep't of Game, 76 Wash.App. 705, 718-19, 887 P.2d 424 (1994).
[17] State v. Swan, 114 Wash.2d 613, 642, 790 P.2d 610 (1990).
[18] Bowles v. Dep't of Ret. Sys., 121 Wash.2d 52, 70, 847 P.2d 440 (1993).
[19] Mike's Painting, Inc. v. Carter Welsh, Inc., 95 Wash.App. 64, 68, 975 P.2d 532 (1999).
[20] Mahler v. Szucs, 135 Wash.2d 398, 435, 957 P.2d 632, 966 P.2d 305 (1998).
[21] 135 Wash.2d 398, 957 P.2d 632, 966 P.2d 305 (1998).
[22] Mahler, 135 Wash.2d at 434, 957 P.2d 632.
[23] Mahler, 135 Wash.2d at 435, 957 P.2d 632.
[24] Mike's Painting, 95 Wash.App. at 68, 975 P.2d 532.